## VITERBO *v.* FRIEDLANDER.[1]

*(Circuit Court, E. D. Louisiana. June 9, 1885.*

1. LEASE—LOSS OF THING LEASED.
   Under the Louisiana law a lease is dissolved by loss of the thing leased, (La. Civil Code, art. 2728;) and a lease shall end if the thing leased be destroyed by an unforeseen event. La. Civil Code, art. 2697.

2. SAME—OVERFLOWS NOT UNFORESEEN EVENTS.
   It is the settled jurisprudence of the state of Louisiana that *crevasses* and overflows of the Mississippi river are not unforeseen accidents, and this is in accordance with the natural state of things as they exist in the alluvial portion of Louisiana. *Jackson* v. *Michel*, 33 La. Ann. 723, followed.

In Chancery. S. C. 22 FED. REP. 422.

*Charles Louque*, for complainant.

*Geo. H. Braughn, Chas. F. Buck,* and *Max Dinklespeil,* for defendants.

PARDEE, J. This cause was on application and consent of both parties referred to one of the masters of this court. His report covers all the issues in the case, and seems to be in accord with the evidence. His findings are as follows: (1) That the property leased was not destroyed; (2) that the loss of the growing crop, the partial filling of the canals and ditches, and the washing away of the bridges, were not caused by an unforeseen event; (3) that the plantation is as suitable for cultivation as a sugar plantation, if not in better condition, as it was prior to the overflow, and that the clearing of the canals and ditches and the repairing of bridges are incidents necessary to the cultivation of a sugar plantation; (4) that equity can give no relief to complainant, and that his bill should be dismissed, with costs.

The exceptions filed attack the entire report and conclusions, and

[1]Reported by Joseph P. Hornor, Esq., of the New Orleans bar.
Reversed, see 7 Sup. Ct. Rep. 962.

the arguments in support of the exceptions cover the entire issues between the parties. As to the amount and extent of the damage resulting to the leased property by the *crevasse* and consequent overflow, there is little, if any, dispute, either in evidence or in argument. The plant and stubble cane was destroyed, the ditches were, some partially and some wholly, filled, the canals were partially filled, and the bridges generally swept away. The water remained over the land until July, and when the water retired a deposit of sand was left over the land of from three to six inches. To cultivate the place as a sugar plantation the following year, 1885, would require the cleaning out and re-opening of the ditches and canals, the replacing or rebuilding of the bridges, and the obtaining and planting of seed cane, all of which would require considerable outlay and expense, particularly if the plantation should be put in the condition it was in at the date of the *crevasse*. So that if we dispose of the conclusions of the master, we dispose of the case.

1. The thing leased is described in the notarial act of lease as "a certain sugar plantation, situated in the parish of St. Charles, in this state, known as Friedlander's plantation,   *   *   *   and with said plantation (which embraces all the land in said parish owned by said lessor) are also leased all the buildings, out-houses, fences, and other appurtenances thereof, consisting of," etc.

Then follows a minute description of the sugar-house and machinery, and all the buildings and surroundings, etc., not one nor any of which are shown to have been impaired or lost. In fact none of the property so described as leased has been wholly or partially destroyed by a foreseen or unforeseen event, and there can be no question that if the contract between the parties had gone no further as to the property to go into the possession of the lessee, no argument even could be had about the matter. But it is contended that as the property leased is generically described in the lease as "a sugar plantation," and as the contract between the parties contains this provision, to-wit:

"And the said lessor further declared that he does hereby give unto said lessee all of the growing cane crop of 1883, now standing in the field, which the said lessee expressly binds himself to plant as seed cane on said plantation, and to reimburse said lessor for said cane crop, said lessee binds himself to leave on said plantation, for the sole use and benefit of said lessor at the termination of this lease, December 15, 1888, eighty-five acres of full standed seed cane, (such as is usually called first year's stubble,) which has been thoroughly cultivated, cut at the proper time for saving seed, and carefully windrowed, especially for seed; and, in addition thereto, said lessee shall also leave on said plantation, for said lessor, not less than 200 acres of stubble from what is called plant cane, which shall be properly protected in the ground:"

—and as the seed cane so given was planted on said place, and was destroyed by the *crevasse*, together with the bridges and ditches,—that the thing leased was a sugar plantation, with growing and standing cane, and the necessary appliances and conditions to grow and

raise each year sugar, and that the "thing" so leased has been destroyed.

The term "sugar plantation," used in the lease to denote the property leased, may or may not, by itself, mean a plantation ditched and bridged, and supplied and appareled with adequate machinery, and furnished with seed cane, and planted cane, and stubble cane, all requisite to the present growth and production of sugar, but as used in the lease it is undoubtedly limited and explained by the circumstantial description of exactly what was leased. The very terms thereafter used with reference to the cane then in the field, and the obligations entered into with reference to it, show that such cane was not leased, but was loaned for consumption, and the effect of such loan was that the cane became the property of the lessee of the plantation. See Civil Code La. arts. 2910, 2911. In this case I think it is clear that the thing leased has not been destroyed.

2. In view of the first conclusion I deem it of little importance whether the *crevasse* and overflow, resulting in the damage aforesaid, was or not an unforeseen event. Under Louisiana law the lease is dissolved by the loss of thing leased. See article 2728, Civil Code La. It is true that in article 2697 of the Code it is provided that the lease shall end if the thing be destroyed by an unforeseen event, but it seems to me that article 2728, *supra*, is all embracing, and as it is without condition, and as by other articles of the Code the existence of the thing leased is essential to the life of the lease, (see articles 2692, 2710, Civil Code La.,) it matters little to the continuance of the lease how the thing leased is destroyed, if destroyed or lost at all. However this may be, it is the settled jurisprudence of the state of Louisiana that *crevasses* and overflows of the Mississippi river are not unforeseen accidents. *Vinson* v. *Graves*, 16 La. Ann. 162; *Masson* v. *Murray*, 21 La. Ann. 535; *Jackson* v. *Michie*, 33 La. Ann. 723; and this is in accordance with the natural state of things as they exist in the alluvial portion of Louisiana, where the plantation in question is located.

3. The third conclusion of the master is not exactly clear. He hardly means that a sugar plantation without canals and ditches, and bridges over the canals and ditches, is more suitable for cultivation than one with those ordinarily considered useful improvements. But taking his conclusion to mean that the alluvial deposit left on the place by the overflow has improved (probably) the fertility of the land, and the cleaning out ditches and canals, and the repairing of bridges, are usual and incidental to the cultivation of a sugar plantation, the conclusion is in accord with the evidence in the case.

4. As to equitable relief, the complainant repudiates any demand for a reduction of rent, and claims a dissolution of the contract of lease, on two grounds:

"(1) The destruction of the leased premises in the whole, or at least in part; (2) the failure of the lessor to comply with the warranty of the lease to main-

tain the thing in a condition such as to serve for the use for which it is hired, inasmuch as the use of it has been much impeded, indeed, so much so that it may well be said that the use of it has entirely failed."

No relief is claimed under the general rules and principles of equity, as administered ordinarily in a court of chancery. Indeed, it may be doubted if any could be given. See Story, Eq. Jur. §§ 101, 102; Pom. Eq. § 823. The complainant is then, of course, remitted to the Louisiana Code for authority to grant such relief as he asks. From the facts found by the master the thing leased has not been destroyed in whole or in part, the crops on the place forming no part of the thing leased; and if they do, and were destroyed by an unforeseen event, for such destruction the Code only gives an abatement of rent, (Code, art. 2743,) which, as has been said, is repudiated by the complainant.

The Code, article 2692, expressly stipulates that the lessor is bound to maintain the thing in a condition such as to serve for the use for which it is hired; but, except as provided in article 2699, failure to keep in repair or condition does not annul the lease, for in such case the lessee is required to make the repairs himself and deduct from the rent, (article 2694;) and in this case it may be noted that complainant, in his supplemental bill, admits that by his contract he was to keep the place in repair. Article 2699, *supra*, is as follows:

"If, without any fault of the lessor, the thing cease to be fit for the purpose for which it was leased, or if the use be much impeded,—as, if a neighbor by raising his walls shall intercept the light of a house leased,—the lessee may, according to circumstances, obtain the annullment of the lease, but has no claim for indemnity."

The thing leased in this case was for the purpose of serving as a sugar plantation, a place on which cane was to be grown, thereafter to be made into sugar; and it is vigorously contended that it has "ceased to be fit for that purpose," and that its "use has been much impeded." The argument is that as the ditches and canals are filled up and all the seed cane destroyed, requiring great labor and expense and much delay to put the place in the condition it was before the overflow, and so as to make sugar cultivation thereon profitable, the thing has ceased to be fit, and the lessee is much impeded within the terms and meaning of article 2699, *supra*.

The facts in the case do not warrant the finding that the place has ceased to be fit for a sugar plantation. It is incontestable that it can be used for the purpose of growing cane and making sugar; labor and expense are all that is required, and I take it they are always required; and this place can differ from others in that respect only in requiring more of each. Nor can it be said that the lessee by the overflow is much impeded in the use of the place. If the water had remained, and now covered any considerable portion of the place, there would be much impediment in the use of the thing, but as the facts appear the lessee has the full, unobstructed use of the thing he

leased. The case is that complainant has lost crops, and the present prospect of making profitable crops, and under his contract, according to equitable and Louisiana jurisprudence, he must bear his loss, as he does not bring his case within the provisions of article 2743, Civil Code La., for an abatement of the rent. There is no adjudicated Louisiana case cited that supports the complainant's demand for annullment of the lease on the ground that the defendant has failed to comply with the obligations of the contract. The Louisiana cases cited by the master are adverse. See *Dussnau* v. *Generes,* 6 La. Ann. 279; *Denman* v. *Lopez,* 12 La. Ann. 823.

A few words as to the French authorities cited:

The extracts from Troplong (Troplong du Louage des Choses, c. 695, 697) on the effects resulting from the loss of the fruits and the harvest from fatal circumstances and through violent perturbations, and claiming that the fruits not gathered are at the risk of the lessor, are taken from his commentaries on articles 1769, 1770 of the Code Napoleon, relating solely to the reduction of the rent in case of the loss of the harvest.

The extract from 6 Marcadi, 499, is an insolated extract from his commentary on article 1771, Code Napoleon, in relation to the loss of fruits separated from the soil. The extract from the same author, volume 6, art. N. C. 1720, is from a commentary on article 1720 of the Code Napoleon, the place of which is supplied in the Louisiana Code by articles 2693 and 2694, in relation to the repairs made by the lessor. A comparison of the two codes will show that the Louisiana Code goes further than the Code Napoleon in this: that it provides that in case of the refusal of the lessor to make the repairs, the lessee may cause them to be made at the lessor's expense.

The case of *De Silly C. de Pommereau,* Journal de Palais, 1872, p. 939, which counsel cite "as having the advantage of presenting precisely the features of the present cause," has been misapprehended, as in that case the Court of Cassation refused to rescind and annul the lease, but held that the rent might be reduced, and so ordered. No adjudicated French case is cited which justifies the court in concluding that the French jurisprudence in cases similar to the present differs from our own.

The complainant's case is a hard one, and if the justification could be found, either in Louisiana law or the general principles of equity, I should be very glad to afford him relief, even to compelling the defendant, who is in no wise in fault, to share part of the inevitable loss; but as I understand the case, under the authorities, the complainant can have no reduction of rent, because the overflow was not an accident of such an extraordinary nature that it could not have been foreseen by either of the parties at the time the lease was made, (Civil Code La. art. 2743;) nor can he have a dissolution or annulment of the lease, because the thing leased has not been destroyed in whole or in part by an unforeseen event, (Civil Code La. art.

2697;) nor lost, (Civil Code La. art. 2728;) nor has it ceased to be fit for the purposes for which it was leased, (Civil Code La. art. 2699 ;) nor is the use of it much impeded. Civil Code La. art. 2699.

The exceptions to the master's report will be overruled, with costs; and the report will be confirmed and homologated, and the defendant will be allowed to take a decree dismissing the complainant's bill with costs.