## No. 7792.

MRS. M. J. JACKSON, ADMINISTRATRIX, VS. WM. C. MICHIE AND ROBERT MURDOCK.

### ON THE MOTION TO DISMISS.

Two appeals having been granted to the same appellant, the appellee moved the dismissal of both: of the first appeal, for alleged irregularities, and of the second, on the ground that the first order having once been granted and a bond thereunder filed by appellant, the lower court was divested of jurisdiction and had no authority to issue the second order. *Held* that, if the first order of appeal was illegal, the lower court was not divested of its jurisdiction over the case and could legally issue the second order.

It has never been held in Louisiana that a party must move for a new trial in a jury case, as a condition precedent to his appeal, though it is, as a general rule, proper that he should do so.

To take away the right of appeal, there must be an unconditional, voluntary and absolute acquiescence in the judgment rendered, on the part of the appellant.

### ON THE MERITS.

The tenant of a predial estate cannot claim an abatement of the rent, under Article 2743, C. C., on account of an overflow of the Mississippi River. Such an event is not one of the accidents of extraordinary nature that could not have been foreseen by the parties. Decision in 16 An., 162, affirmed.

The surety is only discharged by a prolongation of the term of payment granted the debtor, when it is granted by a party having the legal authority to do so. The administratrix of

a succession has no such authority; and the fact that she was also widow in community does not give her any additional power in that respect.

An issue which was not raised in the lower Court and is made for the first time in the brief of Counsel in this Court, shall not be noticed or passed upon.

APPEAL from the Thirteenth Judicial District Court, parish of Tensas. *Hough*, J.

*Wade R. Young* for Plaintiff, Appellee and Appellant.

*Kennard, Howe & Prentiss, Thomas P. Clinton* and *Reeve Lewis* for Defendant Murdock, Appellee and Appellant:

First—The appeal of plaintiff should be dismissed, because she asked for an order which did not give time to cite the appellees, in disregard of § 4, Act No. 45, 1870, Extra Session, p. 100. The fault is imputed to her, because she asked for an improper day. Citizens' Bank vs. Ruty, 26 An. 748; Given vs. Clark, 12 La. 480; Hempkin vs. Averett, *id*. 483.

Second—And plaintiff's appeal should also be dismissed because she opposed the motion for a new trial, acquiesced in the judgment and made no motion for a new trial in a jury case. Barnwell vs. Herman, 6 M. 928; Lambeth vs. McMurray, 15 La. 466; Wright vs. Ferrin, 10 An. 91.

Third—As to the merits of the cause and on behalf of the defendant and appellant Murdock. It is elementary that suretyship is *strictissimi juris*, and cannot be extended from one time to another. Mouton vs. Noble, 1 An. 192; Adle vs. Metoyer, *id*. 254; McMichael vs. Gillespie, 7 Rob. 13; Rev. C. C. 3063.

    Extension of time by creditor to principal debtor, without consent of surety, discharges the latter. Rev. C. C. 3063, Gosserand vs. Lacour, 8 An. 75; Projet of Amendments, p. 356.

Fourth—The facts of the case show (a) that plaintiff was administering as widow in community, owning one-half of the plantation and entitled to the usufruct of the other half; (b) that she had a right to lease one-half as owner, and the other half as usufructuary entitled to civil fruits. C. C. 533, 544, 545; (c) that she made the lease without order of the Court; (d) that she was not required by order of court or any law to take surety; (e) that extensions were granted to Michie, the principal, without consent of Murdock, the surety; (f) that plaintiff has never proved any such assent, 1 An. 254; and (g) that plaintiff in taking her judgment waived her privilege on Michie's property seized in the suit, and which Michie had bonded for $1400. Transcript, p. 9.

Fifth—On these facts the following points are made:

    (a). That plaintiff, as owner and usufructuary, no debts or minor heirs being shown, had the power to grant, and did grant, the extensions, and so discharged appellant, Murdock. C. C. 544, 545; 8 An. 75.

    (b). There was really no need of her formal appointment as administratrix. Burton vs. Brugier, 30 An. 482.

    (c). It would be contrary to equity for plaintiff, presumably of her own volition and for her own purposes to grant the extensions, and then claim she had no power to do so.

    (d). There is no question here of her power to alienate the land. It is a question of dealing with the civil fruits which were her own.

    (e). But looking at her strictly as administratrix, it is an error to say the succession of Jackson is a being that dwells apart, impeccable, infallible, taking advantage of every good bargain which plaintiff may make as to civil fruits, and repudiating such as plaintiff may choose to repudiate. And such theory is refuted in the following cases:

        Turnbull vs. Freret, 5 N. S. 795; Sloan vs. Stevenson, 24 An. 279; Haile vs. McGehee, 29 An. 350; Succession of Marr, 23 An. 718.

    (f). No error or fraud in the extensions is pleaded or proved by plaintiff. If loss occurs to the estate, she is responsible on her bond. 29 An. 350; 24 An. 279;

(g). The cases cited by plaintiff, analyzed, and shown to be not against the contention of appellant, Murdock, and where they seem to be expressions shown to be mere dicta, or careless utterances, which this Court is asked to correct.

(h). The defendant Murdock is discharged by act of plaintiff in relinquishing the security she had by seizure in this cause.

Penn vs. Collins, 5 Rob. 213 ; Rev. C. C. 3061.

(i). Plaintiff has no right to have the judgment amended, because she asked for no new trial; because it cannot be amended as between plaintiff and Michie, for both are appellees; it cannot be amended as to Murdock, for this would be to give a greater judgment against him than against his principal. Rev. C. C. 3037; Gustine vs. Union Bank, 10 Rob. 412 ; and, finally, the verdict should stand, unless founded on some error of law. 10 An. 92. Our contention is that the verdict and judgment are erroneous *in toto*, and should be set aside as such ; but in no event should the judgment be increased.

The opinion of the Court was delivered by

TODD, J. The plaintiff sues the defendants, the first as principal and the second as surety, to recover the sum of $10,282 60 with interest, alleged to be the balance owing for the rent of the Aubrey plantation, in the parish of Tensas, for the years 1876, 1877 and 1878.

The demand sued on is evidenced by a written contract of lease and three promissory notes, signed by the defendant Michie, and by a writing indorsed on the contract of lease and signed by the defendant, Murdock, in the following words:

"I hereby bind myself as security for the above and foregoing lease without agreeing to sign or indorse the notes mentioned therein."

The lease was approved by the parish judge of said parish in an order rendered on the 28th of January, 1876, the contract being dated the 8th of December, 1875, and the plantation leased belonged to the succession of D. P. Jackson, deceased, of which the plaintiff was the administratrix.

The lessor's privilege was also claimed on the crops and movable property on the premises; and a writ of provisional seizure issued and was executed against the same.

The rent for the year 1878 was not due at the inception of the suit, and an exception against this part of the demand, amounting to $5000, was sustained, and the suit to that extent dismissed.

The defendant, Michie, answered, first, by a general denial, and further claimed in compensation and reconvention amounts aggregating $7600, based on the following causes or considerations:

Amount expended in repairing plantation buildings, alleged to have been damaged by the lessor during the interval between the commencement of the lease, under the contract, and the time when the lessee was enabled to take possession, and for use of plantation mules during that interval; damages resulting from the loss of mules by death, and which the lessor failed to replace, and damages resulting from the overflow of the land.

The defendant, Murdock, answered, and averred his discharge from all liability for the debt, by reason of prolongations of the terms of payment granted to Michie, his principal, by the plaintiff, without his knowledge and consent.

The case was tried before a jury, who returned a verdict in favor of plaintiff for $3770, for which judgment was rendered *in solido* against the defendants.

From this judgment appeals were taken by both defendants and by plaintiff. The defendant Michie subsequently abandoned his appeal by a formal withdrawal of the same before the execution of an appeal bond.

## On Motion to Dismiss.

There is a motion to dismiss the plaintiff's appeal, which is the first question for our consideration.

The plaintiff, in fact, applied for and obtained two orders of appeal, executed two appeal bonds, and filed in this Court two transcripts.

The first appeal was taken on the 24th of January, 1880, and made returnable on the 9th of February, 1880. The second order of appeal was taken on the 3d of May, 1880, returnable on the 2d Monday of February, 1881.

The defendants moved to dismiss the first appeal on the following grounds:

1. That there was not allowed sufficient time by the order to cite the appellees, and it was, therefore, illegal.

2. That the plaintiff had acquiesced in the judgment.

And the dismissal of the second appeal was claimed for the reason that one appeal having been granted and the appeal bond executed, the District Court was without jurisdiction to grant the second appeal.

If the first order of appeal was illegal, as alleged, the jurisdiction of the District Court was not divested over the matter of the appeal by the rendition of such order and the execution of the appeal bond under it. It is true that the order of appeal and the execution of the appeal bond in accordance therewith, as a general rule divests the inferior court of jurisdiction; but this contemplates a valid and legal order, and the giving of a bond under such order. If the order be illegally or irregularly rendered, the judge may correct such error by granting another order in conformity to law, notwithstanding the appellant may have given bond and brought up his appeal under the first order. The matter resolves itself into this: The first order of appeal was either legal or it was not. If legal, the proceedings under it are regular and legal, and the appeal should be maintained. If the order was illegal, then the granting of it did not divest the judge *a quo* of jurisdiction, but he could properly disregard it as a nullity and cure the irregularity by a subse-

quent order, as he did do; and the appeal under such subsequent order should be maintained, that is, if no other cause of dismissal is shown.

In the case of Bates vs. Weathersby, 2 An. 484, where two orders of appeal had been granted, two appeal bonds executed and two transcripts sent up, as in this case, the Court said: "It (the first order) was irregularly taken, and the inferior court had not, by the first order given, divested itself of jurisdiction of the cause, but still retained full authority to grant a second order which would be available to the parties and enable them to be heard in this Court." See, also, 10 An. 488; Evans et al. vs. Sauvinet (N. R.) O. B. 42, 638; 32 An. 814.

Nor do the circumstances relied on to support the charge of acquiescence on the part of the plaintiff in the judgment of the lower court constitute such proof of acquiescence as to debar him from his appeal.

These are, that the appellant did not move for a new trial, but opposed the motion for a new trial when made by the defendants. It has never been held that a party must move for a new trial in a jury case as a condition precedent to his appeal, though it is as a general rule proper that he should do so. Nor does the record show that the plaintiff opposed the granting of a new trial moved for by the defendants. There was such a motion made by the defendants, tried and overruled. We know as a matter of practice, that such motions are often made *pro forma* and overruled by the judge *instanter*, and without discussion. Be that as it may, to take away the right of appeal there must be an unconditional, voluntary and absolute acquiescence in the judgment rendered, on the part of the appellant, and the evidence fails to satisfy us that there was such acquiescence in this instance. It doubtless often happens that a plaintiff, in whose favor a verdict is rendered, though it does not give him all that he thinks he is entitled to, is willing to acquiesce therein and receive what it gives him, if the defendant is acquiescent also and willing to pay the amount awarded thereby; but such conditional acquiescence in a verdict does not deprive him of the right of appeal, if he finds that the defendant, instead of paying the debt, resorts to an appeal himself as a further means of resisting its payment.

And, besides, no act of the plaintiff, done after the judgment was rendered and signed, and it is only then that there is a judgment, looking in the least to an acquiescence in it, is pretended to be shown in this case.

An appeal is an important right, which should never be denied, unless its forfeiture or abandonment is conclusively shown.

The motion to dismiss is, therefore, denied.

ON THE MERITS.

1. The demands in compensation and reconvention, set up in the answer of the defendant Michie, in addition to the credits admitted in the petition, are supported by his (Michie's) testimony alone; and the extravagance of his estimates weakens, in a great measure, if it does not destroy, the effect of his testimony. For instance, he alleges that four of the mules leased with the plantation died during the year 1876, and were replaced by the same number of inferior animals at the beginning of 1877; and three more died in 1877, and were not replaced at all by the lessor; and he actually estimates his damages on this account, for the two years, at $4500. From the extravagance of this estimate and the want of certainty in the evidence, of the real loss sustained from this cause, we were at first inclined to reject the whole claim; but, on reflection, believing that the defendant had some ground of complaint, and in view of the importance of terminating this litigation, we have concluded to allow what it would have cost him to hire other mules, estimating such hire at $25 per head—making $100 for that year (1876), and one-half this sum ($50) for the loss on the inferior mules for 1877; and $75 for the loss of the services of the three mules that died during that year—making the total credit from loss of the mules allowed in diminution of the price of the lease, as authorized by Article 2699 of Civil Code, $225.

As to the damage claimed from the delay in getting possession of the leased premises for more than a month after the time stipulated in the contract, and the use of the mules during that time by the lessor, it might be considered that the defendant had waived such claim by taking possession of the place when he did, without objection, and from his silence at the end of the year, when the rent for that year matured and was paid in part; but, satisfied that he was subjected to loss from this delay and from the use of the working animals by the lessor during this interval, we have deemed it but just that some allowance should be made him for this cause; and the proper allowance, as far as we can gather from the evidence, would be $400. The damages or reduction claimed on account of loss from the overflow and injury to the crop therefrom cannot be allowed. C. C. 2743; Vinson vs. Graves, 16 An. 162.

This makes the total credits to which the lessee, Michie, is entitled under his pleas, amount to $625.

2. The only questions presented by the answer of Murdock, are, 1st, whether there were prolongations of the terms of payment granted the principal debtor, Michie, without his (Murdock's) knowledge or consent; and, 2d, if so, whether Murdock, the surety, was discharged by the effect of the same.

The evidence of the extension of time granted for the balance due on

the rent note of 1876, appears by an endorsement on the note signed by the plaintiff.

In regard to this extension, Michie says it was agreed to about the time he paid $1000, which he obtained from Murdock to pay on the note; that the payment was made in Murdock's store; that Murdock might have been in the store at the time, and that a day or two after-wards he told Murdock of the extension, and does not state that Murdock made any objection to it. The extension on the second note, and this was granted without the consent of Murdock, is supported alone by the testimony of Michie. The testimony of Murdock might have thrown ad-ditional light on this point so essential to his defense, as to his knowl-edge or ignorance of the alleged indulgence; but, singular to say, although a resident of the place where the court was held, he was not called as a witness, and we are without the advantage of his testimony. It is apparent that there was a studied design, on the part at least of Michie, to obtain these prolongations, and evidently for the advantage of his co-defendant and surety, Murdock. This is shown by the frequent appeals he made by letters for indulgence, and the care taken to designate the exact time or number of days of the delay asked for; and the offer to pay a small amount in consideration of the indulgence, and tender it before the maturity of the note; and, whilst making lavish promises of pay-ments, to be made on the indulgence being granted, to turn over nearly the entire crop of cotton to Murdock, and leave the whole of the rent for 1877 unpaid, save the small sum ($420) offered as a consideration for the delay; and finally, when Murdock was provided for and had received the bulk of the crop, to change his tone suddenly, and avow his intention to abandon the place entirely, though the lease had another year to run, unless the plaintiff would make a large reduction on the rent, both for the year past and the one to come. We must confess that these circum-stances create a grave suspicion in our minds, that the prolongations granted, conceding that they were granted, were the result of a regularly devised plan, to which both defendants were privy, to obtain the same to the prejudice of the plaintiff and for the advantage of Murdock; and there is no fact disclosed by the record to relieve this suspicion. Admit-ting, however, that Murdock was not aware of, or consenting to, these prolongations, the question arises: did they have the legal effect to dis-charge him from liability for the debt?

Undoubtedly the general rule declared by a textual provision of the Code is, that a surety is so discharged by a prolongation of the term of payment made without his consent. C. C. 3063.

To have such effect, however, the law contemplates that such pro-longation is granted by one having the legal authority to grant it, and the consequent discharge of the debtor resulting from it.

Had the plaintiff in this case such authority?

She sues as the administratrix of the succession of D. P. Jackson, deceased; the parties sued contracted with her in that capacity; it is admitted that the plantation leased belonged to the deceased; and the debt for the rent of the same, if due, must be owing his succession. If such was the capacity of the plaintiff, it can make no difference that she derives that capacity or obtained her appointment of administratrix of the succession of the deceased by right of being the widow in community. She contracted as administratrix for the lease of succession property and sues in the same capacity. Nor is there any evidence that she pretended to exercise any authority with respect to this property or the leasing of it, except in the capacity named, as contended for by defendants' counsel. Her act in leasing the plantation was, on her application, approved by the Probate Court, which is inconsistent with her contracting in her personal capacity.

The question presented in regard to the power or authority of an administrator to discharge a debtor to the succession administered by him, or make any agreement that would operate such discharge, is not a new question. His authority in this respect has been likened to that of a mandatary; and where the power has not been expressly conferred, the act or agreement from which such legal effect is claimed is *ultra vires* and void.

No express or implied power is delegated by law to an administrator to discharge a debtor of the succession from his obligation to pay a succession debt. He may make himself liable for it by his laches and his neglect to take the proper steps to collect it, but he cannot by his contract or agreement release the debtor from the payment of his debt, no more than the agent without authority could discharge the debtor of his principal.

In the case of Landry, Curator, vs. Delas, 25 An. 181, the Court held:

" An administrator exceeds his proper functions when he enters into an agreement with the debtors of an estate to extend the term of payment beyond that fixed by the original contract. The exercise of such a power by an administrator may be assimilated to acts done by agents, which do not come within the purview of their powers, and which are, therefore, regarded as not binding on their principals." See, also, 8 N. S. 452; 26 An. 659, 343; 28 An. 275.

We know of no authority, or decisions of this Court that contravene this doctrine. The case of Chaffe vs. Lisso & Scheen, recently decided by this Court, to which we are referred, is not in point.

In that case, the authority of the syndic or other administrator to discharge a debtor to the estate by an agreement made with such debtor

or other person, was not at issue. It was claimed in that case that the obligors to an attachment bond were discharged by virtue of certain legal proceedings that transpired before the syndic was appointed, and not by any act of the syndic; and the Court merely passed on the result of such proceedings, the existence and the legal effect of which were alleged by one party and admitted by the other.

For these reasons and considerations, we conclude that Murdock was not discharged from his liability to the succession of D. P. Jackson by the agreement and acts of the plaintiff as administratrix thereof, cited and relied on.

It is argued in the brief that Murdock was also discharged by the neglect of the plaintiff to obtain a judgment against Michie, recognizing the lessor's privilege on the property seized under the provisional seizure. No such issue was raised in the lower court, and we are without authority to notice it or pass upon it when made here for the first time, and that in the brief of counsel.

The amount or balance claimed by plaintiff on the rents of 1876 and 1877, at the institution of the suit, is $5280. This is a smaller amount than the obligations call for, after allowing all the credits indorsed on the first note, and the $420 claimed to have been paid on the second note; from which we conclude that this last named sum must have been included in the acknowledged credits. And, even including this, there would still be a larger balance owing on the two notes than that claimed in the petition. The plaintiff is, however, bound by his admission, and we must recognize the amount due, after deducting the admitted payments, as stated—$5280.

From this must be taken the aggregate of the sums allowed by us on the claims pleaded in Michie's answer, as shown above, amounting to $625. Deducting this sum from the amount claimed, $5280, leaves a balance of $4655 owing by the defendants, for which plaintiff is entitled to a judgment with interest from the time due.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be amended by increasing the amount therein allowed against Wm. C. Michie as principal, and Robert Murdock as security, to four thousand six hundred and fifty-five dollars, which sum they are condemned to pay *in solido*, with eight per cent interest thereon per annum from the 1st of November, 1877, till paid, and that the judgment as thus amended be affirmed, the defendants to pay costs of both courts.

Rehearing refused.