## J. K. Ayres et ux. v. R. G. Patton.

### Decided May 30, 1908.

**1.—Homestead—Rural or Urban—Exemption.**

Evidence considered, and held to support a finding by the trial court that a homestead was an urban and not a rural homestead. A rural homestead may be changed into an urban by the growth of the town or an extension of the corporate limits, and after such change that portion of the former rural homestead which is not situated within the town, or which is not actually used for homestead purposes, loses its homestead character.

**2.—Town or Village—What Constitutes—Evidence.**

A town may be recognized as such though no map showing its subdivisions and streets or roads has been recorded, and though the streets be unnamed and there be no evidence of a formal dedication to public use.

**3.—Evidence—Map.**

A map of the land in controversy, made by a witness while testifying, is not competent evidence when the same is incomplete and inaccurate.

**4.—Evidence—Sale—Execution.**

The fact that a contradiction exists between the recitals in an execution and the endorsements thereon as to the number of previous executions which had been issued, would not render the execution void or inadmissible in evidence, nor render a sale thereunder subject to collateral attack.

**5.—Execution Sale—Resale—Title.**

Where, because of some irregularity in advertising, the same land was levied upon and sold a second time by virtue of the same execution, the same person being the purchaser at both sales, evidence considered, and held to show title in the purchaser.

**6.—Business Homestead—Evidence.**

Evidence considered, and held sufficient to sustain a finding that a lot in a town was a business homestead although the defendant had no residence homestead in the town.

Appeal from the District Court of Montgomery County. Tried below before Hon. L. B. Hightower.

*Jno. Hamman* and *John B. Warren,* for appellants.—Defendants having purchased the Wilson Lang survey and having built their residence thereon in 1888 and occupied the same, with their children, as their homestead, and subsequently designating the same as their rural homestead, in writing as the statute provided, all done at a time when there were only two or three houses at Conroe, and they some three or four hundred yards from defendants' residence, the said homestead was, in fact, a rural homestead, and extended to the limits of the designation made in 1890, covering by metes and bounds 200 acres, including their residence, outhouses, stables, etc. Posey v. Bass, 77 Texas, 512; Wilder v. McConnell, 91 Texas, 600; Roberts v. Cawthorn, 26 Texas Civ. App., 477; Iken & Co. v. Olenick, 42 Texas, 195; Saunders v. Lanham, 57 S. W., 70; Williams v. Willis, 84 Texas, 398; Watkins Land Mg. Co. v. Abbott, 14 Texas Civ. App., 447; Neeley v. Case, 32 S. W., 785; Taylor v. Boulware, 17 Texas, 74; Baldeschweiler v. Ship, 21 Texas Civ. App., 80; Paris Exch. Bank v. Hulen, 21 Texas Civ.

App., 285; Atkinson v. Phares, 20 Texas Civ., 152; Houston & G. N. R. R. Co. v. Winter, 44 Texas, 605.

The character of a homestead is not changed from a rural homestead to an urban homestead by the sale of a few lots by the owners off of a portion of said rural homestead that lies near a small town, the said town not being incorporated, and said portion of the rural homestead not being, in fact, within said town. Posey v. Bass, 77 Texas, 512; Wilder v. McConnell, 91 Texas, 600; Neeley v. Case, 32 S. W., 785; Taylor v. Boulware, 17 Texas, 74; Paris Exch. Bank v. Hulen, 21 Texas Civ. App., 285; Atkinson v. Phares, 20 Texas Civ., 152.

The sale of the improved part of a tract of land which, in fact, is a rural homestead, by the owners, and removal therefrom on account of the health of the head of the family, does not destroy the homestead character of the balance of the homestead tract and subject the same to forced sale for debts, if the sale is made to obtain funds to move so as to regain lost health, and with the specific intent to return and make the home of the family on the balance of the land not so sold. Scott v. Dyer, 60 Texas, 135.

*Nugent & Foster, Lewis & Austin* and *Dean, Humphrey & Powell,* for appellee.—The trial court's finding of fact that the homestead of J. K. Ayers was situated within the town of Conroe and was confined to the block upon which the residence and garden were situated, and that the same was an urban homestead when it was sold by them to West about May, 1903, is fully supported by the evidence adduced upon the trial of this case. Alexander v. Lovitt, 95 Texas, 661; Shryock v. Latimer, 57 Texas, 674; Evans v. Womack, 48 Texas, 230; Wilder v. McConnell, 91 Texas, 600; Constitution of Texas, art. 16, sec. 51; Mikael v. Equitable Securities Co., 74 S. W., 67; Iken v. Olenick, 42 Texas, 195; People v. McCune, 35 L. R. A., 398.

PLEASANTS, CHIEF JUSTICE.—This is an action of trespass to try title brought by appellee against appellants. The land involved is the Wilson Lang survey in Montgomery County and a part of lot No. 18 in block No. 7 of Ayres Addition to the town of Conroe in said county. The defendants answered by general denial and plea of not guilty. The trial in the court below was without a jury and resulted in a judgment in favor of plaintiff for the Wilson Lang survey and in favor of defendants for the portion of said lot in the town of Conroe described in plaintiff's petition.

The evidence shows that appellants, who have been married to each other since 1876, moved to and established their home upon the Wilson Lang survey in Montgomery County in 1888. This survey lies immediately south of and adjoining the tract upon which the town of Conroe was then situated. Previous to this time appellant, J. K. Ayres, had been engaged in the saw mill business and he made the move to the Lang survey for the purpose of engaging in the mercantile business in the town of Conroe. At that time Conroe was a small place and none of the houses which composed the town were near the home erected by the appellants. Their house was built near the right of way of the International & Great Northern Railroad and the end of the "Y" of

the Gulf, Colorado and Santa Fe Railroad, about 300 yards south of the joint depot of the two roads. At that time most, if not all, of the town of Conroe was some distance north of said depot. Some time after moving upon the Lang survey Ayres subdivided a portion of it into blocks and lots with streets and alleys between them and sold said lots with reference to the streets. He did not place a map of this subdivision on record or make a formal dedication of the streets. He testified that the only map he had of the subdivision was a pencil sketch made by himself and when he sold a lot he would measure it off as shown on said sketch.

The portion of the Lang survey which was thus subdivided extended some distance south and east of appellants' residence. In this subdivision a street was left running east and west just south of appellants' residence. South of this street and fronting on either side of the railroad right of way there are numerous lots which were sold by appellants prior to the sale of their residence property, and six or eight of the purchasers of said lots established homes thereon. There were also residences on the Lang survey both east and west of appellants' residence prior to the time of its sale.

The Lang survey contains 266 acres, most of said survey being south and east of appellants' former residence property. When appellants established their home on the survey they only enclosed the block on which their residence was built and which they subsequently sold. None of the land on said survey in controversy in this suit was ever enclosed. It is covered with timber, and the only homestead use appellants appear to have ever made of it was to obtain fire wood therefrom.

In 1889 appellants, by an instrument in writing executed and acknowledged as required by the statute and which they placed upon record, designated the Wilson Lang survey of 266 acres as their homestead. In 1890 for the purpose of borrowing money thereon they segregated a tract of 66 acres in the northeast corner of said survey and executed and recorded another instrument in which they designated the remaining 200 acres of said tract as their homestead. Appellant J. K. Ayres became engaged in the mercantile business in Conroe shortly after he moved near said town and continued in said business for several years. After quitting the mercantile business he became engaged in the real estate business, which he carried on in said town in an office situated on the portion of lot 18 in block 7 which was adjudged to him in this suit as his business homestead. He continued in the real estate business at Conroe until 1903 at which time his health became impaired and he with his family moved to Houston in the hope of regaining his health. After he determined to move to Houston he sold his residence and the block of ground upon which it is situated. Both he and his wife testified that they did not intend to remain permanently in Houston, but that they had at all times a fixed intention of returning to Conroe and building another home upon the unsold portion of the Lang survey. They have several times refused to sell the land in controversy because they have always regarded it as their homestead and intended to so use it as soon as Mr. Ayres' health would permit his return to Conroe. During their sojourn in Houston the office in the town of Conroe, used by Ayres as his place of business, has been rented.

The corporate limits of the town of Conroe as established in 1905 includes the Ayres residence property and most, if not all, of the homes on the subdivisions of the Lang survey which had been sold by appellant. It does not appear when the town was first incorporated, but none of the property on the Lang survey was included in the corporate limits if such municipal corporation existed prior to 1905.

In a former suit involving the issue of whether the office property occupied by Ayres in the town of Conroe was his business homestead, he testified that he lived in the town of Conroe and claimed that his residence on the Lang survey was a town residence. He explains this in his testimony in this case by saying he thought it was a town residence because it was in the edge of town.

All of the land in controversy was levied on by the sheriff of Montgomery County on July 29, 1905, under an execution issued out of the District Court of Travis County upon a judgment rendered in said court in favor of the firm of Graham & Potter against the appellant J. K. Ayres. The land was advertised and sold under this levy on the first Tuesday in September. At this sale appellee was the highest bidder and the land was sold to him and the sheriff executed to him a deed therefor. Thereafter, on October 2, 1905, the sheriff, being of opinion that notice of said sale had not been given as required by law, again levied upon the property under the same execution and advertised the sale of the same as required by law, and on October 8, 1905, returned the execution reciting in his return thereon the facts as to the former sale and the second levy and readvertisement and requesting that a writ of *venditioni exponas* be issued and sent to him. This writ was regularly issued, and acting thereunder the property was again sold by said sheriff to appellee and a deed was executed by the sheriff therefor to him. This was the only deed introduced in evidence by the appellee. The execution under which the property was sold contains the following recitals:

"And whereas, it further appearing that seven executions have issued in this cause and have been returned not satisfied, but with credits as follows: February 5, 1901, for sale of land, $1,383.70; April 2, 1902, for sale of land $1,935.20." In the clerk's certificate to the execution is the following: "I .......... do hereby certify that the within and foregoing is a true and correct copy of Seventh Execution, 5th after revival of judgment." The indorsement on the execution is as follows: "In Travis County District Court. File No. 10412. Docket No. 7, page No. 44, Parrish & Potter v. J. K. Ayres, 7th Execution, 5th after revival of judgment. Judgment $4,147.00. Issued July 12, 1905, Jas. P. Hart, Clerk, Filed Oct. 30, 1905."

We think these facts sustain the finding of the trial court that at the time of the sale of their residence in 1903 such residence was the urban homestead of appellants and none of the land on the Lang survey in controversy in this suit was a part of their homestead. It may be conceded that at the time appellants established their home upon the Lang survey their homestead was rural, and if it had remained such the sale of their residence and their temporary residence in another county would not have been an abandonment of the homestead rights in the remainder of said survey, it having been at all times their intention to return and build another home on said premises. But a rural home-

stead may be changed into an urban, and after such change has been accomplished that portion of the rural homestead which is not situated within the town, or which is not actually used for homestead purposes, loses its homestead character.

The evidence indicates that in 1890 when the 200 acres on the Lang survey was designated by appellants as their homestead it was in fact their rural homestead, but subsequent thereto and prior to the sale of their residence property in 1903, the character of the homestead had changed. The town of Conroe had grown in the direction of appellants' residence. They had subdivided portions of the tract which formerly constituted their rural homestead into blocks and lots and many of these lots had been sold and were occupied as homes by the purchasers. The lots so sold by them and occupied by the purchasers were situated on all sides of appellants' residence and fronted upon streets or roadways which connected with the original streets of the town. It is immaterial that no map of these subdivisions was recorded and that the streets or roadways upon which they fronted were not named and were not formally dedicated to public use. A town may be recognized and treated as such when no map showing its subdivisions has been recorded, and the facts before stated show that appellants' residence at the time it was sold was actually within the limits of the town of Conroe. It also appears that the appellant was engaged in business in the town and that no part of the land in controversy was used by him. for homestead purposes further than that he procured wood therefrom.

We think the facts stated sustain the finding of fact by·the trial court that at the time of the sale of their residence appellants' homestead was urban and that they had no homestead rights in any of the land in controversy on the Lang survey. Wilder v. McConnel, 91 Texas, 601; Mikael v. Equitable Securities Co., 74 S. W., 67. These conclusions dispose of all of appellants assignments of error complaining of the trial court's findings of fact upon the issue of homestead and, without naming them in detail, said assignments are overruled.

The trial court did not err in refusing to allow appellants to introduce in evidence a pencil sketch of the survey made by appellant, J. K. Ayres, while on the witness ·stand showing the location of the Lang survey and appellants' residence and other lots on said survey. It appears from the statement of facts that the sketch was not a full and complete sketch showing all of the blocks and lots in said survey and did not show the streets and alleys between such blocks and lots. The court allowed the witness to use the sketch for the purpose of explaining his testimony, but refused to permit it to be introduced and filed as documentary evidence · in the case.

There is no merit in the assignment complaining of the ruling of the court in admitting in evidence the execution under which the property was sold to appellee, over appellants' objection that said execution failed to show upon its face the number of previous executions which had been issued on the judgment upon which it was issued. The apparent contradictory recitals in the execution and the endorsements thereon as to the number of previous executions that had been issued upon the judgment did not render the execution void or inadmissible in evidence. At most it was but an irregularity which, taken in connec-

tion with inadequacy of price or some other irregularity in the sale might, in a proceeding brought for that purpose, have authorized the setting aside of the sale, but it would not render the sale void and subject it to collateral attack.

The sixteenth assignment and proposition thereunder are as follows:

"The court erred in rendering judgment for plaintiff for the Wilson Lang survey, in that the evidence failed to show a deed from the sheriff of Montgomery County for the land in controversy executed by virtue of the first levy of the writ of execution of date July, 1905, and therefore the plaintiff failed to show title in himself."

"The first sale of the land in controversy, made under the execution of date July 12, 1905, was valid, and the subsequent relevy on the same property and sale under the *venditioni exponas* was void, and plaintiff, having failed to introduce in evidence the deed executed and delivered to him by the sheriff by virtue of the first sale, failed to show title in himself."

There is no merit in this assignment. If the first sale was valid, as contended by appellants, the undisputed evidence shows that appellee was the purchaser thereat and had complied with the terms of the sale and received a deed therefor from the sheriff. The recitals in the return on the execution showing these facts were not objected to by the appellants, and are not contradicted by any evidence in the record, and it is therefore immaterial that the deed mentioned in said recitals was not introduced in evidence.

Appellee, under appropriate cross-assignments, asks that the judgment in favor of appellants for the office and fraction of a lot in the town of Conroe be reversed and judgment be here rendered for him for said property. We do not think that the evidence shows, as a matter of law, that at the time the execution was levied appellants had lost their homestead rights in the business homestead of appellant J. K. Ayres. The testimony tends to show that Ayres was only temporarily sojourning in Houston for the benefit of his health, and that he was carrying on his land business all of this time and at all times intended to return to the town of Conroe and resume said business in his office there. It seems that for at least a part of the time that he remained in Houston the office property was rented, but we do not think this fact necessarily requires a finding that he had thereby lost his homestead rights therein.

We are of opinion that the judgment of the court below should be affirmed and it has been so ordered.

*Affirmed.*

Writ of error refused.