**O'FIEL et al. v. JANES et ux.   (No. 527.)**

(Court of Civil Appeals of Texas. Beaumont. Feb. 13, 1920. On Rehearing, March 24, 1920.)

1. **Homestead ☞64—Rural homestead taken into city and cut into lots loses homestead character.**

When a rural homestead is taken in by a city and the city grows out to the property and the owners thereof voluntarily cut the same up into lots and blocks and dedicate the streets and alleys to the public, it loses its homestead character.

2. **Homestead ☞63—Urban homestead need not be located within incorporated city or town.**

In determining whether a homestead is rural or urban, within the meaning of the Constitution, it is not necessary that it be located within an incorporated city or town.

3. **Homestead ☞216—Whether homestead in unincorporated town is rural or urban for jury.**

Whether a homestead in an unincorporated city or town is rural or urban is a question of fact, unless the city or town is of such size and the homestead is so situated therein and is of such a nature that reasonable minds cannot differ as to its character.

4. **Homestead ☞63—Platting land does not render it urban property.**

The platting of a homestead and laying it out into lots and blocks and streets and filing the plat with the county clerk does not constitute it urban property, unless in fact it is situated within a town or village.

5. **Homestead ☞216—Whether platted land was urban property held for jury.**

Where platted homestead property was immediately adjacent to a thickly settled unincorporated colored neighborhood that had all the attributes of a city, except a post office, and had a large population, school with 500 pupils, church and stores, graded streets and alleys and lots and blocks, recorded maps and plats, the population already spreading over the homestead property on which were a number of improved lots, the question of whether the property was urban within the meaning of the provision of the Constitution relating to homesteads was, at least, a question for the jury.

6. **Homestead ☞154—Claim to one or more of several tracts may be abandoned.**

Where a rural homestead consists of two or more tracts of land, the homestead claim to one or more of them may be abandoned.

7. **Homestead ☞167—Contract to sell does not deprive land of homestead character.**

An executory contract to sell a homestead does not as a matter of law deprive it of its homestead character.

8. **Homestead ☞181(2)—Executory contract of sale to be considered on issue of abandonment.**

An executory contract of sale of a homestead is a circumstance to be considered by the jury in determining the issue of abandonment.

9. **Compromise and settlement ☞6(5)—Transfer of land in suit supported by consideration.**

If a lawyer who purchased land at an execution sale believed that he had acquired title under his deed and filed suit against the judgment debtor claiming it as a homestead, there was a valuable consideration for a settlement whereby the land was divided and deeds exchanged.

10. **Trespass to try title ☞44—No instructed verdict as against general denial.**

Even as against a plea of general denial, a plaintiff in trespass to try title cannot have an instructed verdict, when by his own testimony he raises issues of fact against his title.

11. **Homestead ☞129(1)—Vendee of purchaser at sheriff's sale not innocent purchaser.**

If as a matter of fact property was a rural homestead at the time it was sold at sheriff's sale, no issue of innocent purchaser could arise as between the original owner and vendee of the purchaser at the sheriff's sale.

12. **Evidence ☞248(6) — Admissions of husband as to abandonment of homestead not admissible against wife.**

Statement by husband, after an execution sale, to the effect that he and his wife had abandoned their homestead claim to the property sold, was not admissible against his wife's claim of homestead.

On Rehearing.

**13. Appeal and error ⬤⇒154(1)—Starting another action not waiver of right to appeal.**

An action started by appellant against prevailing plaintiff, petition referring to the adverse judgment, filed prior to motion for a new trial, *held* not to show acquiescence in the judgment rendered as a matter of law so as to bar his right of appeal.

Appeal from District Court, Jefferson County; E. A. McDowell, Judge.

Suit by Zeke Janes and wife against David E. O'Fiel and others, in which E. E. Easterling and another intervened. From an adverse judgment, the defendants appeal. Reversed and remanded for new trial.

A. T. Watts, C. W. Howth, and David E. O'Fiel, all of Beaumont, for appellants.

E. E. Easterling and H. M. Whitaker, both of Beaumont, for appellees.

WALKER, J. This suit was brought as an action of trespass to try title by Zeke Janes and his wife, Alzena Janes, against David E. O'Fiel and his vendees for the land described in plaintiffs' petition. Plaintiffs' original petition was filed on February 21, 1917, and the case was tried on their first amended original petition in the usual form of trespass to try title, filed on May 11, 1918. E. E. Easterling and H. M. Whitaker, on the 1st day of December, 1917, intervened in this suit by petition in the form of trespass to try title for an undivided one-half interest in the land described in plaintiffs' petition. Defendants tried the case on their second amended original answer, filed February 3, 1919. For the purposes of this opinion, we give the following quotation from defendants' answer:

"And for answer herein these defendants and each of them say that they are not guilty of the supposed wrongs and injuries complained of by plaintiff or any of them in any manner and form, as alleged by plaintiffs, and this they are ready to verify. * * * And for further answer herein, without waiving their exceptions, these defendants and all of them deny all and singular the allegations in plaintiffs' and interveners' pleadings contained, and say that the same are not true, either in whole or in part, demanding strict proof thereof, and place themselves upon the country."

In addition to these allegations, the vendees of O'Fiel alleged that they were innocent purchasers in good faith from O'Fiel, without knowledge of plaintiffs' interest in the land, and by plea of improvements in good faith.

The case was tried before a jury, and, on conclusion of the testimony, the court instructed a verdict for plaintiffs and interveners for the title to the land, and for the vendees of O'Fiel for their improvements. From this judgment O'Fiel and his vendees have appealed to this court.

For many years prior to the 25th of February, 1914, Zeke Janes and wife owned and lived on 55 acres of land in the J. W. Bullock league survey in Jefferson county, Tex. This land, during all the time they had lived on it prior to February 25, 1914, was used by them for homestead purposes, and was claimed by them as their homestead. On this date they conveyed, by warranty deed, to D. Kinard 40 acres of the 55-acre tract for a consideration of $8,000, $2,000 of which was paid in cash and the balance by vendor's lien notes, secured by a vendor's lien on said property. The vendor's lien was reserved both in the notes and in the deed. The deed contained this clause:

"It is expressly agreed and stipulated that a vendor's lien is retained against the above-described property, premises and improvements, until the above-described notes and all interest thereon are fully paid, according to their face, tenor, effect and reading, when this deed shall become absolute."

This 40 acres was described as follows:

"Beginning at the northwest corner of the Zeke Janes tract of land, said corner likewise being the northeast corner of the ———; thence south 500 feet to an iron stake in said boundary for starting point, Pender tract of land; thence south along the west boundary of said Zeke Janes tract of land, the same likewise being the east boundary of said Pender tract of land 432 feet to an iron stake for a corner; thence west 590½ feet to an iron stake for a corner; thence south 1,838 feet more or less to an iron stake for corner; thence east 920 feet more or less to an iron stake for corner; thence north 1,800 feet more or less to an iron stake for corner; thence west 240 feet more or less to an iron stake for corner; thence north 432 feet to an iron stake for corner; thence west 100 feet to the place of beginning, said tract containing 40 acres more or less."

At the time this deed was made, this 40 acres was under fence and had been for many years cultivated by Zeke Janes and his wife. Immediately upon the execution of this deed, Janes and wife delivered possession of said premises to D. Kinard. Kinard, with the knowledge and consent of plaintiffs, bought this land for the purpose of cutting it up into lots and blocks and making of it an addition to the city of Beaumont. Immediately upon taking possession of the premises, Kinard subdivided the land, following out his understanding with plaintiffs, into lots and blocks, and opened up streets and alleys over and across the land, graded the streets, and numbered the lots and blocks and marked them by painted stakes with numbers thereon placed on the lots. This addition he named

the Silver City addition to Beaumont, Tex. He had a map made of the addition, and had the same recorded in the map records of Jefferson county, Tex. We here insert a copy of this map and plat showing the lots and blocks into which this 40 acres was divided, and its relation to the surrounding property:

land to them, save and except nine lots which had been sold, and on which plaintiffs had released their vendor's lien; plaintiffs agreeing with Kinard to carry out all contracts of sale made by him for these lots. Kinard testified that he had made about 60 contracts in addition to the nine lots sold.

On October 30, 1914, by virtue of an execu-

PLAT OF
SILVER CITY ADDITION

It will be noted from this map that plaintiffs' original 55 acres consisted of two tracts, one of 15 acres and the other of 40 acres, joined together by a narrow strip 100 feet wide and 432 feet long. It also appears from this map that, in numbering the blocks in his addition, Kinard followed the numbers in the Pender addition, which is shown on this map to be blocks 1, 2, 3, 4, 5, and 6. Also, that he extended Marie street, which enters the Pender addition on the north, across his addition, dividing it so that lots 9, 10, 13, 14, and 17 were on the right of Marie street, and blocks 6, 7, 8, 11, 12, 15, and 16 were on the left. Hebert, Nora, Lela, Sarah, Lucile, and Rena streets entered this addition from the west, crossing it and butting up against property on the east. When Kinard divided this land into lots and blocks, he began at once to sell these lots, under an agreement with plaintiffs that they would release such lots from their vendor's lien when Kinard paid the proportionate price therefor. In September, 1914, not being able to carry out his contract with plaintiffs, Kinard and wife reconveyed this

tion issued on a judgment against Zeke Janes, the sheriff of Jefferson county levied on all of blocks 8 to 17, inclusive, as shown by the above map, except the nine lots above referred to, and on the 1st day of December, 1914, the sheriff of Jefferson county, at public sale, sold the land so levied on by him to the appellant O'Fiel, executing to him a sheriff's deed therefor, and O'Fiel paying therefor the sum of $435. For the purpose of settling any controversy that might arise between them, on December 7, 1914, O'Fiel and Zeke Janes divided this 40 acres of land, Janes taking lots 8, 9, 10, 11, and the north half of blocks 12 and 13, and O'Fiel taking the south half of lots 12 and 13, and lots 14, 15, 16, and 17. Zeke Janes executed to O'Fiel a quitclaim deed, and O'Fiel executed to Zeke Janes a special warranty deed. After the institution of this suit by the plaintiffs for recovery of the land conveyed to O'Fiel by Zeke Janes, O'Fiel filed a suit against Zeke Janes for recovery of that portion conveyed to him. In May, 1917, Janes and wife and O'Fiel made a new agreement, for the purpose of settling

their lawsuits, whereby Janes and wife executed to O'Fiel a new quitclaim deed to the land in controversy in this suit, and O'Fiel executed a new deed to Janes and wife for the other half. Before the execution of this deed, and pending this litigation, as a fee to represent them, plaintiffs executed to Whitaker and Easterling, attorneys at law, a deed to an undivided one-half interest in the land in controversy; this deed being their title in their intervention. At the time the sheriff levied on this 40 acres of land, a large community of negroes lived north and west of and immediately adjacent to the Silver City addition to Beaumont, Tex., as shown on the above map. The Pender addition was thickly settled, one of the witnesses testifying that there was scarcely a vacant lot in this addition. The South Park colored school was about two blocks west of this property, and was attended by something like 500 negro children. In the north part of the Pender addition was a negro church, two or more stores were in this community, and one of the witnesses testified that there were something like 500 houses in this community. The streets across the Silver City addition were constantly used by the public. The nine lots sold by Kinard were scattered over this addition, and each of them was improved; the owners living thereon. After this property was reconveyed to plaintiffs, they fenced up no part of it, but placed two agents in the field for the purpose of selling the unsold lots.

The court erred in giving this peremptory instruction, for the following reasons:

[1-3] First. These facts raise the issue of urban property. The rule seems to be well settled that when a rural homestead is taken in by a city, and the city grows out to this property, and the owners thereof voluntarily cut the same up into lots and blocks and dedicate the streets and alleys to the public, it loses its homestead character. Ayres v. Patton, 51 Tex. Civ. App. 186, 111 S. W. 1079; Blum v. Rogers, 78 Tex. 530, 15 S. W. 115; Warren v. Kohr, 26 Tex. Civ. App. 331, 64 S. W. 62. The rule is equally as well settled that in determining whether a homestead is rural or urban, within the meaning of the Constitution, it is not necessary that it be located within an incorporated city or town. Wilder & Co. v. McConnell, 91 Tex. 600, 45 S. W. 145. Where the city or town is not incorporated, whether the homestead be rural or urban is a question of fact, unless the city or town is of such size and the homestead is so situated therein and is of such a nature that reasonable minds cannot differ as to its character. Crisp v. Thrash, 52 S. W. 92; Clements v. Crawford Co., 64 Ark. 7, 40 S. W. 132, 62 Am. St. Rep. 149; Spaulding v. Haley, 101 Ark. 296, 140 S. W. 172.

[4, 5] We fully agree with appellees in their counter proposition that the platting of land and laying it off into lots and blocks and streets, and filing the plat with the county clerk, does not constitute it urban property, unless, in fact, it is situated within a town or village. But when we say this, we must leave the issue as to whether it is in a town or village to the jury. As shown by the statement above made by us in this connection, considered in connection with the map of the Silver City addition, this property was immediately adjacent to a thickly settled colored neighborhood that had all the attributes of a city except a post office. If defendants' witnesses are to be believed, here was a large population, school with 500 pupils, church and stores, graded streets dedicated to and used by the public, numbered lots and blocks, recorded maps and plats, the population already spreading over this property, there being nine improved lots at the time the property was seized. If appellees are correct in their contention that these facts are not sufficient to raise the issue of urban property, it must follow that incorporation is necessary in order to constitute a city or town within the meaning of our Constitution. In this we cannot agree with them.

[6] Second. The issue of abandonment of the homestead claim to this 40 acres was raised by the facts given by us here. Where the rural homestead consists of two or more tracts of land, the homestead claim to one or more of them may be abandoned. In Autry v. Reasor, 102 Tex. 123, 108 S. W. 1162, 113 S. W. 748, Chief Justice Gaines said:

"In * * * Blum v. Rogers, 78 Tex. 530 [15 S. W. 115], we held that the building of a house within a town on a certain lot and renting it deprives it of its homestead character. We see no reason why the same rule should not apply to a rural homestead."

[7, 8] From an inspection of the above map, it appears that the 40-acre tract and the 15-acre tract are joined by a strip of land about 100 feet wide and over 400 feet long. Plaintiffs voluntarily detached this 40 acres from the 15 acres on which their house was situated, with the purpose of making of it a city addition. It is true, as claimed by appellees, that an executory contract to sell a homestead does not, as a matter of law, deprive it of its homestead character. Brooks v. Young, 60 Tex. 32; Reyes et al. v. Kingman Texas Implement Co., 188 S. W. 450. But such sale is a circumstance to be considered by the jury in determining the issue of abandonment.

[9] Third. As to the deed from plaintiff and wife to O'Fiel, of date May 28, 1917, the issue of failure of consideration should have been submitted to the jury. O'Fiel paid $435 under the execution sale for this property. If this was urban property, or if the plaintiffs had abandoned their homestead claim thereto, he acquired the title to all the land included in his deed. He was a lawyer, thoroughly acquainted with all the facts. If in

good faith he believed that he had acquired the title under this deed, or that he filed the suit against plaintiffs in good faith on probable cause, then plaintiffs received a valuable consideration under the agreed settlement.

"An agreement to forbear, for a time, proceedings at law or in equity, to enforce a well-founded claim, is a valid consideration for a promise." 1 Parsons on Contracts, 439, 440.

"As has been incidentally noticed, a promise to compromise a claim utterly unfounded will not be regarded as a valid consideration, because such a claim is obviously and transparently valueless; * * * it is otherwise when a suit is brought bona fide on probable cause, and a promise to compromise such a suit is a valid consideration, even though the suit should be held to be unfounded." 1 Wharton on Contracts, § 533.

Fourth. Appellees also attack this deed on the ground that the uncontroverted evidence shows that it was procured by fraud. As presented on this appeal, we do not believe this issue was raised. If O'Fiel paid a valuable consideration for this deed, we find nothing in this record to vitiate it on a separate and distinct issue of fraud.

Against appellants' assignments of reversible error in this case, interveners advance the counter proposition that having filed a plea of intervention, in the usual form of trespass to try title, and defendants having answered the same only by plea of general denial, they cannot complain of the action of the trial court in instructing a verdict as to them.

[10] We cannot sustain this counter proposition. If interveners are correct in the contention that appellants did not answer their plea of intervention, which was in the form of trespass to try title, by plea of not guilty, it cannot avail them. In developing their title as interveners, they showed that they acquired their title from plaintiffs pendente lite; also in developing both their title and the title of plaintiffs, they raised, as questions for the jury, the issues we have just discussed. Even as against a plea of general denial, a plaintiff in trespass to try title cannot have an instructed verdict when by his own testimony he raises issues of fact against his title. But apart from this, as no special exception was urged against defendants' answer, construing all reasonable intendments in favor of appellants, we do not believe their answer subject to the attack made by this cross-assignment.

[11] The trial court did not err in failing and refusing to submit to the jury the issue of innocent purchaser as to the vendees of O'Fiel. If, as a matter of fact, this property was the rural homestead of plaintiffs, and O'Fiel bought it at sheriff's sale, no issue of innocent purchaser could arise as against the plaintiffs.

[12] The statements made by Zeke Janes after the execution sale, to the effect that he and his wife had abandoned their homestead claim to this property, were not admissible against his wife's claim of homestead. Jacobs Bernheim & Co. v. Hawkins, 63 Tex. 1.

The other assignments raised by appellants are presented in such way that we are not able to review them.

For the error committed by the court in instructing a verdict against appellants, this cause is reversed and remanded for a new trial.

On Rehearing.

[13] In the original opinion, we did not discuss appellees' counter proposition to appellant's twenty-second assignment of error. On rehearing they have asked us to dispose of this proposition, which is as follows:

"The trial court did not err in refusing to grant appellants' motion for new trial, because David E. O'Fiel, appellant, after the rendition of the judgment herein, instituted a suit in the district court of the Fifty-Eighth judicial district of Jefferson county, Tex., wherein and whereby he seeks to recover from the appellee Zeke Janes, by reason of the judgment rendered in the instant case, making such judgment the basis and foundation of his cause of action. A waiver or release of errors (if any) operating as a bar to a motion for new trial or to the further prosecution of an appeal or writ of error is implied from conduct and acts which are consistent with the claim of all right to set aside or review the judgment or decree which it is sought to bring in review."

The facts under this proposition are as follows:

"After appellees had filed this suit against O'Fiel, O'Fiel, in the Fifty-Eighth district court of Jefferson county, filed suit against Zeke Janes and wife for the northern half of the property bought by him at the sheriff's sale, and which he had reconveyed to Janes and wife in an effort between him and them to settle this controversy. After this judgment was rendered in this cause against O'Fiel, and after he had filed a motion for new trial, he filed his suit in the Fifty-Eighth district court a first amended original petition, complaining of Zeke Janes, defendant, wherein he sought to recover from Zeke Janes blocks 7, 8, 9, 10, 11 and the north half of blocks 12 and 13 in the Silver City addition. This petition was in part in the usual form of trespass to try title, and O'Fiel further pleaded his purchase of all the property in the sheriff's sale and the contract entered into between him and Zeke Janes. This petition makes the following reference to the judgment rendered against O'Fiel in the Sixtieth district court: 'That although bound by his promise and obligation to effect and release any claim, if any, which he, the defendant, had against said plaintiff against the south one-half of said land in controversy, this defendant herein on or about the 7th day of March, 1917, instituted suit against this plaintiff to recover said land known as the south one-half of said addition and described hereinabove, and that a trial of same had on or about the 1st day of February, 1919, the defendant herein recovered said land of and against this plain-

tiff.' That the value of the considerations which so failed or of the said land which defendant wrongfully recovered of this plaintiff was reasonably worth the sum of $4,000."

As we understand this amended petition, this is the only reference contained therein to this judgment, which is a mere recital of a fact that is undisputed. As a ground for recovery against Zeke Janes, O'Fiel further alleged that the consideration expressed in the contract between him and Zeke Janes had failed. He closed this petition with a prayer that he have judgment for the title and possession of the land described in his petition.

In Davis v. Wakelee, 156 U. S. 680, 15 Sup. Ct. 555, 39 L. Ed. 578, a case cited by appellees, the Supreme Court of the United States said:

"It is contrary to the first principle of justice that a man should obtain an advantage over his adversary by asserting and relying upon the validity of a judgment against himself, and in a subsequent proceeding upon such judgment claim that it was rendered without personal service upon him."

As we understand O'Fiel's petition filed in the Fifty-Eighth district court, he was not asserting and relying upon the judgment rendered against him in this cause for any purpose. It is clear that he derived no benefit whatever from the reference to the judgment which had been rendered against him. The rule is thus stated in 3 Corpus Juris, 665:

"In order to bar the right of appeal upon the ground of acquiescence, the acts relied upon must be such as to clearly and unmistakably show acquiescence, and it must be unconditional, voluntary, and absolute."

This record does not show that O'Fiel further prosecuted his suit in the Fifty-Eighth district court. It is shown by this record that he was diligent in perfecting his appeal. In due time he filed his motion for new trial. On the 28th of March, 1919, he filed an amended motion for new trial. This was followed by the filing of an appeal bond and briefing the case. With this show of diligence before us in perfecting this appeal, can it be said, as a matter of law, that O'Fiel unmistakably acquiesced in the judgment rendered against him? We do not think so.

As in Barnes v. Lynch, 9 Okl. 11, 59 Pac. 995, it seems to us that O'Fiel's conduct in filing this amended petition in the Fifty-Eighth district court was only an effort on his part to save and protect himself in said suit in case he should lose his appeal in this case. In the Barnes-Lynch Case, Judge Macatee of the Supreme Court of Oklahoma reviewed very fully the authorities on this proposition, and, among many cases, cited Jackson v. Michie, 33 La. Ann. 723, wherein the court said:

"To take away the right of appeal, there must be an unconditional, voluntary, and absolute acquiescence in the judgment rendered, on the part of the appellant. * * * It doubtless often happens that a plaintiff, in whose favor a verdict is rendered, though it does not give him all that he thinks he is entitled to, is willing to acquiesce therein and receive what it gives him; * * * but such conditional acquiescence in a verdict does not deprive him of the right of appeal. * * * An appeal is an important right, which should never be denied, unless its forfeiture or abandonment is conclusively shown."

This counter proposition is overruled.

Again, appellees question our statement that by their testimony they raised an issue against their title. On this statement we said:

"Also in developing both their title and the title of plaintiffs, they raised as questions for the jury the issues we have discussed. Even as against a plea of general denial a plaintiff in trespass to try title cannot have an instructed verdict when by his own testimony he raises issues of fact against his own title."

Appellees say:

"The court assumes in a general way that the issue of whether or not Zeke Janes and wife had abandoned their homestead rights in the land in question was in issue against the prima facie title of plaintiffs and interveners. Now we do not deny that plaintiffs and interveners made this issue of fact, but we feel confident that the court on reflection will see that this issue in no way affected the superiority of plaintiffs' and interveners' title or claim of defendants which plaintiffs and interveners showed that the defendants had the land, to wit, the sheriff's deed from Janes to O'Fiel, which was offered by them only for the purpose of showing common source. The sheriff's deed, without the judgment and execution, being sufficient to show claim on the part of the defendants, therefore a common source."

It was admitted by Zeke Janes that he was a party defendant and that judgment was rendered against him in the case of V. A. Collins v. Beaumont Land & Building Company. The deed from Janes by sheriff to O'Fiel is not in the record, but this agreement does appear in the record:

"There was next introduced in evidence by plaintiffs' original copy of sheriff's deed dated December 3, 1914, recorded in Book 147, p. 98, of the deed records of Jefferson county, Tex., whereby Jake Giles, sheriff of Jefferson county, Texas, for a consideration of $435 paid him by David E. O'Fiel under the execution on judgment of V. A. Collins et al. v. Beaumont Land & Building Company et al., No. 9789, district court of Jefferson county, Tex., conveys said O'Fiel all of blocks 8, 9, 10, 11, 12, 13, 14, 15, 16 and 17 of the Silver City addition to Beaumont," etc.

We are unable to understand what else is required to raise an issue of fact against the title of appellees. They admit that the facts are sufficient to raise the issue of aban-

donment and the record shows that they agreed that O'Fiel was holding under a sheriff's deed made by virtue of an execution sale. It is true that appellees introduced the O'Fiel deed only for the purpose of showing common source, but, by the agreement made by them in introducing this deed, it clearly appears that O'Fiel acquired the title to the land, provided appellees had abandoned the same as a homestead, and, as just said by us, they confess in their motion for rehearing that this issue was raised by their own testimony.

Again, appellees question in their motion for rehearing almost every statement made by us in the original opinion. In the original opinion we say that the cash payment made by Kinard to Janes was $2,000. This was a typographical error which we failed to observe before filing the opinion. The cash payment was only $200. Again, we say that the nine lots released by Zeke Janes to Kinard were improved at the time O'Fiel bought at the sheriff's sale. Possibly we are in error in this statement, as we find on further reference to the statement of facts that only seven houses had been built in the Silver City addition at the time O'Fiel bought. All other criticisms by appellees of the statements made by us in the original opinion have had our most careful consideration, and the record fully sustains us in all that we say.

As a witness in the case, O'Fiel undertook to describe the settlement surrounding the Silver City addition at the time he bought the property under the sheriff's sale. Some of this description he gives in the present tense, and appellees insist that he was referring to the conditions as they existed at the time of the trial, and not three or four years before when he bought it; but after giving the number of houses in the Silver City addition, and the schoolhouse, and stating the number of children going to school out there and locating the Pennock and Parts additions, and describing the neighborhood generally, he concludes by saying:

"And that was the condition that existed out there along about December, 1914, and prior to the time when I became a purchaser."

The motion for rehearing is in all things overruled.