GREEN WARREN AND WIFE v. JOSEPH KOHR ET AL.

Decided May 22, 1901.

**1.—Execution—Proof of Issuance.**

A finding that an execution was issued is supported by the uncontradicted testimony of the attorneys for plaintiff, that about ten days after the recovery of the judgment he procured an execution, and with the constable went to defendant's place of business to make a levy, and that the execution was returned "no property found,"—there being no objection to the testimony on the ground that it was not the best evidence of the facts.

**2.—Homestead—Abandonment by Lease.**

Where part of a homestead parcel of land is leased out by the owner for a term of eight years, with privilege of renewal in the lessee, and the consideration of the lease is the placing by the lessee of improvements on the land not adapted to homestead uses, the lease in itself carries with it sufficient evidence of an intention to permanently abandon the part leased.

**3.—Same—Business Homestead—Intention to Resume Business.**

Where the head of a family had ceased to use a business homestead to exercise his calling or business, it is still entitled to protection against forced sale if he has a present intention of resuming business in it, but not where the intention to resume depends upon a condition that may or may not arise at some indefinite time in the future.

**4.—Injunction—Judgment for Debt Not Warranted.**

Where an injunction is sought on the sole ground that the execution is levied on homestead property, and there is no attack made in the pleadings or evidence on the judgment, and the judgment is not dormant, the court has no authority to render a judgment for the debt evidenced by it.

Appeal from Bexar.  Tried below before Hon. John H. Clark.

*Chas. W. Ogden, L. C. Grothaus, C. A. Goeth,* and *W. H. Lipscomb,* for appellants.

*George C. Altgelt,* for appellees.

FLY, ASSOCIATE JUSTICE.—Appellants instituted this suit to restrain the sale of certain property under an execution issued out of the Justice Court in a case styled R. C. Harn v. Green Warren, on the ground that it was a part of their homestead.  A temporary writ of injunction was granted.  R. C. Harn, one of the appellees, answered, setting up his judgment in the Justice Court and the issue of execution thereunder, the filing and registration of an abstract of the judgment, the issue of the alias execution under which the property was seized, and alleged that if the property was ever a part of the homestead, it had been severed from and abandoned as a part of the same.  Joseph Kohr, the constable who levied the writ of execution, answered by general denial.

The cause was tried without a jury, and judgment rendered that the portion of the property rented to Kothman & Co. was subject to execution, and that the portion on which the saloon is erected was a part of the homestead, as well as the yard back of it, and as to that portion the injunction was perpetuated. There was also judgment as prayed in the answer for the amount of Warren's indebtedness to Harn, for foreclosure of the judgment lien obtained by the abstract of the judgment of the Justice Court, and a decree for an order of sale to be issued out of the District Court. It was provided in the judgment that paying it would satisfy the judgment in the Justice Court. The finding of facts of the District Court are as follows, with the exception of the omission of the lease to Kothman & Co., only parts of which it is deemed necessary to copy into this opinion:

"Green Warren and Susan E. Warren, the plaintiffs, being husband and wife, on April 29, 1879, acquired title to all of lot No. 4, in San Antonio, Bexar County, Texas, containing 6 3-100 acres, said lot being now known as city block No. 882, and so described by the parties in their pleadings. Said block fronts on San Marcos street and the right of way of the Galveston, Harrisburg & San Antonio Railroad Company, and is otherwise bounded by the San Pedro Creek and a creek known as the Cahrquinto de los Apaches, or Weesatch Creek—reference being made to the plat attached to the lease hereinafter named. Green Warren and wife had their family residence upon that part of said block which is designated "residence of G. Warren" upon said plat, but used the entire block for the purposes of a home and business until about five years ago, as hereinafter stated.

"More than five years ago plaintiff, Green Warren, built a saloon upon the following described portion of said property fronting on San Marcos street, that is to say: having a front of about 35 feet on San Marcos street, and running thence back about 40 feet to a fence, bounded west by San Marcos street, south by a certain fence constituting the fence of a pen, east by a division fence, and north by another fence separating the saloon property from the premises occupied by himself and family as a home. The saloon building covered only a part of this ground, but was separated from the remaining lots by fences as above described. The plaintiff has also used the saloon lot proper in driving his cows and calves from his pens to be watered and in admitting them in same way.

"Green Warren, after the completion of the building, engaged in the retail liquor business, but failing to succeed, retired from that business five years ago, intending, however, again to engage in that business as soon as he might be able to do so. Since his retirement from the retail liquor business Green Warren has constantly rented out the saloon building with the ground on which it stands, about 35x40 feet, to various tenants, at an average rental of $10 per month, and said property was so rented out when this suit was brought, and

yet continues so to rent the same, but using that part of said lot not actually covered by said building as a passway for his stock.

"On December 29, 1898, Green Warren and S. E. Warren, his wife, made a lease to J. W. Kothman & Co. of certain land off his tract of land shown by the following plat: ·

"The lease was to continue for eight years, and the consideration was the building on the eastern part of leased land a durable fence and pens, and on the west part pens and sheds. The first named improvements were to be made at once, the last within two years, and at the end of eight years the improvements were to become the property of appellants. The last clause of the lease was as follows: 'The lessors further agree not in any way to interfere with the free and unmolested use by J. W. Kothman & Co. of the hereinbefore described property. At the expiration of this lease said J. W. Kothman & Co. shall have the first privilege of renting the hereinbefore described premises, and if the lease of the property should not be awarded to said J. W. Kothman & Co. by reason of some other parties paying a greater rental therefor, lessees shall be given sixty (60) days time to remove from the premises.'

"Kothman & Co., immediately after the making of the lease, went into possession of the premises demised to them, and built the improvements required by the terms of the lease and as indicated on the plat. They are dealers in live stock and have used the property in connection

with their business ever since, but permit plaintiffs occasionally to pen cattle in the pens upon the leased property as also to drive calves through the leased premises to the right of way of the Galveston, Harrisburg & San Antonio Railroad Company.

"Green Warren was engaged in farming on a farm belonging to him, on the Leon, up to about two years ago, when he was dispossessed of same, and he was at the date of the institution of this suit, and still is, the owner of six head of milk cows, which he has been milking and from which he supplies his family and sells milk and butter to his customers; his cow pens and sheds being on the rear end of the saloon lot, that is, east of the saloon lot proper, and extending from a certain fence in the rear of the saloon to the leased property. The saloon property and this cow pen constitute the second item of property described in the pleadings.

"On August 9, 1897, defendant R. C. Harn recovered judgment against plaintiff Green Warren, by the name of G. W. Warren, for the sum of $207.50, with 10 per cent interest per annum thereon from August 9, 1897, together with $3.70 costs of court, said judgment being rendered by the Justice Court of Bexar County. On August 20, 1897, execution was issued upon that judgment and returned by the constable 'no property found.' On August 16, 1897, defendant Harn caused to be issued by the justice of the peace who rendered the judgment an abstract of the same, showing the name of defendant Harn as plaintiff and the name of G. W. Warren as defendant, and further showing the number of the suit in which the judgment was rendered, being No. 429, and further showing the date when said judgment was rendered, being the 9th day of August, 1897, and further showing the amount of said judgment, being the amount of $207.50 principal, and $3.50 costs of court, amount still due upon the judgment being $211.20, and further showing the rate of interest specified in the judgment being 10 per cent interest per annum from August 9, 1897.

"Defendant Harn caused said abstract of judgment to be presented to the county clerk of Bexar County for record, and to be filed by said county clerk, and said clerk did, on August 17th, at 10 o'clock a. m., record said abstract in book 5, page 11, of the judgment record of Bexar County. The clerk also properly indexed said abstract showing the name of plaintiff and defendant in the same, and the number of the pages of the book upon which said abstract was recorded. Defendant Harn caused an alias writ of execution to be issued upon said judgment, as alleged by him, and to be levied by defendant Jos. Kohr, who is a constable of precinct No. 1, upon the two pieces of property described in the pleadings. Defendant Kohr, constable, had advertised the property as alleged when plaintiffs sued out the injunction."

The trial judge held that the property leased to Kothman & Co. was subject to execution, but that the saloon and property in rear of it was not subject to execution. The court rested his conclusion as to the property leased by Kothman & Co. on the fact of the lease, and his

conclusion as to the land ocupied by the saloon on the intention of
Warren in the future to resume business in it.

The first assignment of error insists that the finding of fact as to
an execution having issued in August, 1897, shortly after the judgment
in the Justice Court had been rendered, has no evidence to support it.
Jay Minter, whose testimony was not contradicted, swore that he was
the attorney for Harn in the Justice Court, and that about ten days
after the recovery of the judgment, he procured an execution, and with
the constable went to appellant's place to levy on cattle, and that it was
returned "no property found." The witness seemed uncertain about
the return, but his testimony supports a finding that only $10 was
paid on the judgment. Appellants did not even claim payment of that
amount. The testimony of Minter was not objected to on the ground
that it was not the best evidence of the facts to which he testified.

It is true, as contended by appellants, that the mere leasing of a
homestead will not constitute an abandonment of it, but there must
be a clear intention not to return to the property and claim the exemp-
tion, and we do not understand that the question of intention was
ignored by the trial judge in his conclusions of law. If, however, he
did base his judgment upon the fact of lease, regardless of the intention
of appellants in regard to it, that would not necessitate a reversal, but
if the testimony sustains the judgment, it would be our duty to affirm
it, regardless of the reasons given by the lower court for its judgment.

The lease in itself carries with it such evidence of an intention to
permanently abandon the land leased to Kothman & Co., that upon it
alone the finding of abandonment could be predicated. We do not
doubt that if appellants had leased the land to Kothman & Co. in order
to have it improved, with the intention to resume its use for homestead
purposes after the expiration of the lease, there would have been no
such abandonment as would render the property liable to execution, but
in the contract itself it appears that at the end of the eight years
lease appellants intend to again lease the property, and Kothman & Co.
are given the first privilege of renting it, if they pay as much as anyone
else. The character of the improvements indicate that the land was to
be devoted to other than homestead purposes, because if the head of
the family intended, as he swore, to resume his business in the saloon, he
did not intend to use the pens and sheds as a place of business, and they
are not well adapted to the purposes of a residence homestead.

In the fifth assignment of error it is urged that the court should not
have rendered judgment for the amount of the judgment of the Justice
Court, because it was not shown that the latter judgment was dormant.
This contention is evidently inconsistent with the assignment which
urges that there was no proof of the issuance of the first execution. If
there was no such proof, then the judgment of the Justice Court was
dormant, and the District Court had the authority to render such judg-
ment between the parties as justice demanded. Willis v. Gordon, 22
Texas, 242; Burke v. Vanderlip, 22 Texas, 221; Witt v. Kaufman, 25

Texas Supp., 384; Anderson v. Kennedy, 58 Texas, 622; Hale v. McComas, 59 Texas, 487.

But we think the court correctly found that there was evidence of the issuance of an execution within twelve months from the rendition of the judgment in the Justice Court, and that the judgment was not dormant. There was no attack upon the judgment of the Justice Court in pleading or evidence, the sole ground upon which the injunction was sought being that the execution had been levied on the homestead of appellants. There was therefore no necessity for a judgment by the District Court as to the indebtedness of appellants to R. C. Harn. He had a valid judgment for his debt, a judgment that was active and vital. In all the cases where it is held that the District Court should render a judgment as to the debt between the parties, it has been when attacks were being made on judgments on account of their nullity or dormancy, and the attacks were sustained. Carter v. Hubbard, 79 Texas, 356; Railway v. Haynes, 82 Texas, 448. There was no allegation in the petition as to the dormancy of the judgment, and if the injunction had been sought on the ground of dormancy of the judgment, it would not have availed appellants, because it appeared that appellants were indebted to Harn, and in the absence of an offer to do equity by paying the debt, they could not enjoin the execution. Seymour v. Hill, 67 Texas, 385.

Under our ruling that no judgment should have been rendered for the debt shown by the judgment in the Justice Court, it is unnecessary to consider the question as to whether credit should have been allowed for the $10 which Minter swore was paid on the judgment.

Through a cross-assignment appellees ask a review of the ruling of the lower court in regard to the saloon and the land back of it. We are of the opinion that the portion of the saloon not covered by the building, which was used by appellants as a passway for their cattle, was properly held to be a part of the homestead.

We conclude, however, that the house used as a saloon and the land on which it stands had been segregated from the homestead, and was subject to execution. It appears from the facts that five years ago the head of the family failed in business, and since that time has been renting the saloon to others. It had been cut off from the residence homestead, and made a business homestead, and the only testimony offered to show that it had not been permanently abandoned as a business homestead was the assertion by Green Warren that he intended to use it as a place of business when he was able.

The protection extended by the Constitution is to a place in which "to exercise the calling or business of the head of the family." Shryock v. Latimer, 57 Texas, 674; Wynne v. Hudson, 66 Texas, 1; Hargadene v Whitfield, 71 Texas, 489; Pfeiffer v. McNatt, 74 Texas, 640; Duncan v. Alexander, 83 Texas, 441. Judicial construction has reached its limit when it is held that by the language of the Constitution it was intended to protect a business homestead, although the head of the family

is not using it to exercise his calling or business, if he has a present intention to resume business in it. Where the intention to resume is based upon a condition that may or may not arise at some indefinite period in the future, it can not, with a due regard to the language of the Constitution, be held that such intention protects a business homestead.

After Warren gave up his saloon business he farmed for several years, and then engaged in the dairy business and was so engaged at time of trial. In the case of Hill v. Hill, 85 Texas, 103, it was said: "After the destruction of the blacksmith shop, Hill wholly ceased the business 'for which he had previously used the property, and the property itself was subjected to a use foreign to the employment as constable, in which he was engaged. The storehouse was rented for a series of years. It was thus permanently, not temporarily, rented. Not only was it not used, but it was neither adapted nor was it reasonably necessary for the business pursued by Hill. * * * An intention under these circumstances, on his part to make of it a place of business, 'as soon as he got able,'—an indefinite time in the future—is wholly immaterial."

In the case of Shryock v. Latimer, above cited, it was said:, "At the time the property in question was sold, Latimer was not pursuing the business of a merchant, to which the house and lot were adapted and necesssary, but it seems was clerking for other persons; and the fact that his business may have been that of a merchant at a former period can not affect the question, which is, 'What was his business at the time the sale was made?' Nor can the fact that he contemplated, if he ever became able to do so, to resume the business of a merchant, give to him that character, if it did not exist in fact. The law no more protects a man in a place to do business which he is not doing, and not making any immediate preparation to do, than it protects to a man a place for a home which is not in fact a home, or in reference to which no steps have been taken to make it a home for the family. The law protects the place of business because it is the place of business, which can not be unless the head of the family is occupied in a business to which the property is adapted and reasonably necessary. * * * It matters not what the calling or business of a man may be (and, as we have before said, a calling or business is one of the essentials to entitle a person to an exempted place for its exercise), if he does not use the property for the purpose for which the exemption is given, it will be lost. That the failure to so use the property may result from financial embarrassment does not alter the rule, for the law does not exempt that which a man might like to use, but is unable to use for want of means, but it exempts that which he does use." This decision has never, so far as we know, been questioned, but has been often cited and approved as containing the law in regard to business homesteads.

The judgment of the District Court dissolving the injunction as to the land rented to Kothman & Co. is affirmed, as well as that perpetuat-

ing the injunction as to all of the saloon lot except that on which the
· saloon stands, but is reversed as to that part exempting the land occupied
by the saloon from execution, and that part rendering judgment for
R. C. Harn for the amount of the judgment of the Justice Court and
foreclosing a judgment lien, and it is the judgment of this court that
the injunction be dissoved as to the house used for a saloon and the
land occupied by it, and that the same be declared subject to execu-
tion.

*Affirmed in part.*
*Reversed and rendered in part.*

Writ of error refused.