SPILLER et al. v. HOLLINGER.

(Court of Civil Appeals of Texas. San Antonio. April 3, 1911. Rehearing Pending.)

1. LIMITATION OF ACTIONS (§ 84*)—ACCRUAL OF RIGHT OF ACTION — ABSENCE—"CAUSE OF ACTION."

A judgment on which execution has been issued is not a cause of action within the purview of Rev. St. 1895, art. 3367, providing that limitations shall not run on a cause of action if the defendant shall be without the limits of the state; for, even though the judgment debtor be without the state and leave no property therein, execution may be issued and the judgment be kept alive and is efficacious as a second judgment.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 439–448; Dec. Dig. § 84.*

For other definitions, see Words and Phrases, vol. 2, pp. 1015–1019; vol. 8, p. 7598.]

2. LIMITATION OF ACTIONS (§ 84*)—ACCRUAL OF "CAUSE OF ACTION"—ABSENCE.

Where no execution has been issued on a judgment within 12 months from its rendition, and none can be issued because of the inhibition of Rev. St. 1895, art. 2326a, and the judgment can only be revived under scire facias provided by article 3361, the judgment is a cause of action within the purview of article 3367, stopping the running of limitations during the absence of the defendant from the jurisdiction.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 439–448; Dec. Dig. § 84.*]

3. LIMITATION OF ACTIONS (§ 84*)—ACCRUAL OF "CAUSE OF ACTION"—ABSENCE—"DORMANT JUDGMENT."

Rev. St. 1895, art. 2326a, provides that, if no execution is issued within 12 months after the rendition of a judgment, the judgment shall become dormant, and no execution shall be issued unless it shall be revived, but, where the first execution has issued within 12 months, it shall not become dormant unless 10 years shall have elapsed from the issuance of execution thereon. Article 1664 applies the same provisions to judgments of justices of the peace. *Held,* that as a dormant judgment is one on which execution was not issued within 12 months or one which has not been satisfied nor extinguished by lapse of time, but which has remained so long unexecuted that execution cannot now be issued upon it without first reviving the judgment, a judgment upon which judgment was first issued within 12 months after its rendition still subsists after the lapse of 10 years from execution, being the same sort of judgment as one on which execution was not issued within 12 months, and no time being prescribed in which it can be revived, it is within article 3358, providing that every action other than for the recovery of real estate shall be brought within 4 years after accrual of the right of action, and so such dormant judgment is a cause of action within the purview of article 3367, providing for a stoppage of the running of limitations on any cause of action during defendant's absence from the jurisdiction.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 439–448; Dec. Dig. § 84.*

For other definitions, see Words and Phrases, vol. 3, p. 2183.]

4. EXECUTION (§§ 7, 171*)—INJUNCTION—DORMANT JUDGMENT.

While execution on a dormant judgment is improper, it should not be permanently en-

joined, where it appears that the judgment has not been discharged, and may be revived.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 7–15, 17–20, 497–518; Dec. Dig. §§ 7, 171.*]

5. EXECUTION (§ 172*)—INJUNCTION—JURISDICTION.

Where a court has taken jurisdiction of a proceeding to enjoin execution on a dormant judgment, it may proceed to determine all of the issues between the parties.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 519–539; Dec. Dig. § 172.*]

6. EXECUTION (§ 172*)—RESTRAINING—DISSOLUTION OF INJUNCTION—COSTS.

Where defendant improperly sued out execution on a dormant judgment, the costs of a proceeding to enjoin execution on the judgment, although it had not been discharged and might be revived, will be taxed against defendant.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 519–539; Dec. Dig. § 172.*]

Appeal from District Court, Menard County; Clarence Martin, Judge.

Action by E. B. Hollinger against R. H. Spiller and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Moursund & Moursund, of Fredericksburg, for appellants. S. C. Rowe, of Menard, and W. O. Linden, of San Antonio, for appellee.

FLY, J. This is a suit instituted by appellee against R. H. Spiller, sheriff of Menard county, to enjoin him from serving, levying, or in any manner executing two writs of execution issued out of the justice's court of precinct number one of Bexar county on January 6, 1911. The executions were issued under and by virtue of two judgments rendered on July 13, 1891, in cases in which D. Sullivan & Co. were plaintiffs and E. B. Hollinger the defendant. The executions were attacked on the ground that, more than 10 years having elapsed since the last executions were issued, the judgments were barred by limitation. A temporary injunction was issued. D. Sullivan & Co. were made parties, and, together with them, the sheriff pleaded that the absence of appellee from the state of Texas from the year 1897 until the year 1910 had arrested the running of the statute. D. Sullivan & Co. claimed ownership of the judgments, and that they were unpaid, and prayed, in the alternative, for judgment for the amount of the two judgments, interest, and costs. The cause was tried by the court, and the injunction was perpetuated, and it was decreed that D. Sullivan & Co. take nothing by their cross-action.

[1] It was admitted that appellee removed from the state of Texas in the spring of 1897 and resided in the state of Arkansas from that time until in the month of January, 1899, when he removed to San Luis Potosi, Mexico, where he resided until January 15, 1910, when he removed to Menard county, Tex. On July 13, 1891, D. Sullivan & Co. recovered two judgments in the justice's

court of Bexar county, Tex., against appellee, one in the sum of $79.31 and the other in the sum of $162.13, and in the same year an execution was issued under each of the judgments, and both were returned not executed because no property could be found.

It is the contention that a judgment is a cause of action within the terms of article 3367, Revised Statutes, which provides that "if any person against whom there shall be cause of action shall be without the limits of this state at the time of the accruing of such action, or at any time during which the same might have been maintained, the person entitled to such action shall be at liberty to bring the same against such person after his return to the state, and the time of such person's absence shall not be accounted or taken as a part of the time limited by any of the provisions of this title." If the judgments against appellee were causes of action, within the purview of the article quoted, the owner of them must have had a cause of action upon which they could have instituted and maintained suit at any time within 10 years from the issuance of the executions, but there was no such cause of action which accrued at any time during the 10 years, and they could not have maintained a suit thereon at any time. They had live, active judgments under which they had the power and authority to issue executions at any time for 10 years from 1891, whether appellee was in or out of the state, and the judgments could have been kept active thereby for an indefinite period of time. They had no cause of action. They had judgments in which their rights had been adjudicated, and that had been kept alive by issuance of executions within the year from the dates of their rendition. The statute of limitations never began to run by reason of the defendant being within the state, but was put into action by the issuance of the executions, and the absence of the defendant from the state did not deprive the owners of the judgment of any right whatever that they had and held under the statutes. The right to issue an execution is not dependent on the existence of property belonging to the debtor or the presence of the debtor in the state, but judgments could be kept alive by the issuance of successive executions in the absence of both property and the person of the defendant. A suit on an active judgment would not be entertained, unless some new or additional right was to be protected, because it would be an utterly useless action, would uselessly incumber the dockets of a court, and would entail inexcusable costs upon the defendant. It could not come within the letter or spirit of article 3367. The law does not open the courts of the country to parties to obtain something they already have without the aid of the courts. During the 10 years life of a judgment, which begins with the issuance of an execution within 12 months from the rendition of the judgment, the owner of the judgment has no cause of action against the defendant which has accrued or can accrue, but the cause of action has been merged into an active vital judgment which can be kept in that condition for an unlimited number of years.

[2] The case is different with a judgment, under which no execution has been issued within 12 months from its rendition, for in that case there is a dormant judgment under which no execution can be issued (article 2326a), and the only way in which a plaintiff holding such a judgment can preserve his rights is by availing himself of the authority given by article 3361 of reviving his judgment by scire facias or an action of debt brought thereon within 10 years from the date of the judgment. In that case the plaintiff would have a cause of action under the terms of article 3367, and the absence from the state during the 10 years dormancy of the debtor would arrest the running of the statute of limitations while such absence continued. In the case of Low v. Felton, 84 Tex. 378, 19 S. W. 693, it was held that a judgment which was active would be a "cause of action" under the terms of article 3369, which suspends the statutes of limitation until 12 months after the death of a party liable for a debt. In discussing the point the Supreme Court held: "It may be conceded that Hunt had not the right to institute and maintain an action against Jeptha Dyches at the time of his death for the mere purpose of having a judicial determination of the fact that the latter was indebted to him and the amount of that indebtedness, or even for the purpose of obtaining an execution through which the payment of the judgment might be enforced; for the judgment already rendered fixed the fact of indebtedness as well as its amount, and authorized the issuance of execution to enforce its payment, and another judgment could have done no more. For this reason, the right to institute and maintain an action on that judgment in the same jurisdiction in which it was rendered would have been denied while Jeptha Dyches lived." But, as stated by the court, when Dyches died, and "process could no longer issue to subject his estate to the payment of the debt, the creditor, or his legal representatives, became entitled to such remedy against the estate and representatives of the deceased as was necessary to enforce the payment of the sum due." The reasons for that decision of the Supreme Court, under the facts and circumstances, are apparent. When the judgment debtor died, the creditor had no way under the statute of enforcing the demand. His judgment was a cause of action, because, if administration was had of the estate, he would be compelled to prove up his claim for payment as any other creditor, or suffer the penalty for not so presenting it. By the provisions of our laws no execution can ordinarily issue against an administrator or per-

sonal representative of a party against whom a judgment for money has been rendered, but the claim must be established as in the case of any other claim against an estate. Taylor v. Snow, 47 Tex. 462, 26 Am. Rep. 311; Schmidtke v. Miller, 71 Tex. 103, 8 S. W. 638.

Following up the question as to whether suits will ordinarily be permitted on vital judgments, we find the matter definitely settled by the courts of Texas. Johnson v. Murphy, 17 Tex. 216; Parks v. Young, 75 Tex. 278, 12 S. W. 986; Stevens v. Stone, 94 Tex. 415, 60 S. W. 959, 86 Am. St. Rep. 861. In the last-named case it was held: "Where no advantage can accrue to a plaintiff in a judgment by a second suit upon it, we fail to see that there is any propriety in allowing such suit. It is a narrow view of the subject, as we think, to say that the judgment is an evidence of debt, and that a debt will support a cause of action. The purpose of judicial actions is to afford remedies for the enforcement of rights, and, where the result of a suit prosecuted to success is to give the plaintiff no better remedy for the enforcement of his right than he had before, no reason other than a technical one can exist for permitting its prosecution. Since equity discourages a multiplicity of suits and will in a proper case enjoin vexatious litigation, and since under our blended system equitable principles in every case have their full scope and effect, it would seem that our court should never allow a suit upon a judgment, unless it should be made to appear that the second judgment would be more efficacious than the first." The judgments in this case could not have been brought within the scope of the exception, for the judgment creditors had no right to safeguard that could not be preserved by the means placed in their hands by the laws of Texas, and the intervention of a court was not required, and would have been absolutely unnecessary and inequitable. The law placed in their hands an inexpensive and efficacious means of preserving their rights by issuing executions, and that right was in no manner endangered or impaired by the absence of the judgment debtor from the state while the judgment was active. The courts could have done no more than the creditors could do themselves.

[3] There is in the statutes of Texas no definite law prescribing in terms the time in which a judgment upon which an execution has been issued within twelve months from its rendition shall become barred, although the law is definite as to the time in which a judgment will become barred under which no execution has been issued within twelve months. However, there has been read into the statutes by the Supreme Court 10 years' limitation from the date of the last execution. Willis v. Stroud, 67 Tex. 516, 3 S. W. 732; Wilcox v. National Bank, 93 Tex. 322, 55 S. W. 317; Stevens v. Stone, 94 Tex. 415, 60 S. W. 959, 86 Am. St. Rep. 861. In the

first case cited, speaking of the act of 1841, the court said: "That act, like the present law, made no express provision as to limitation upon a judgment where execution had duly issued; but under the decisions of this court, made during its existence, such a judgment was held barred at the expiration of 10 years from the date when the last execution issued thereon."

In the other two cases cited on the subject the same ruling was made. No reference is made in either of the decisions, however, to article 2326a, passed in 1895, no doubt because the judgments under consideration were rendered prior to the passage of that article. In the article mentioned it is provided: "If no execution is issued within twelve months after the rendition of a judgment in any court of record, the judgment shall become dormant and no execution shall issue thereon unless such judgment be revived; but where the first execution has issued within twelve months the judgment shall not become dormant unless ten years shall have elapsed between the issuance of executions thereon, and execution may issue at any time within the ten years after the issuance of the preceding execution." We find in Black's Law Dictionary that a dormant judgment is defined as "one which has not been satisfied nor extinguished by lapse of time, but which has remained so long unexecuted that execution cannot now be issued upon it without first reviving the judgment." It has never been doubted that the word "dormant" has that signification as applied in first part of article 1664, which applies to judgments of justices of the peace, which is almost identical with article 2326a, hereinbefore copied, and all rules of statutory construction would give it the same meaning when applied in the same article to judgments under which an execution has been issued within twelve months from the rendition of the judgment. If dormancy means a suspension of functions for a certain period in the one instance, it must under all reasonable rules of construction mean it in the other. In Cooper v. Yoakum, 91 Tex. 391, 43 S. W. 871, this rule of construction is sustained.

If the language of articles 1664 and 2326a means anything, it means that a judgment under certain circumstances will become dormant, that is, inactive, in 12 months after rendition, and will remain so unless revived, and that a judgment under another set of circumstances will become dormant, that is, inactive, in 10 years from the time when an execution was issued, and remain so unless revived. In the first instance—that is, in regard to a judgment under which no execution has issued within 12 months from its rendition—9 years is given by statute in which it can be revived. No time is prescribed in which the judgment can be revived or an action of debt sustained when a legal execution has been issued, and it would clearly

fall within the provisions of article 3358, which are as follows: "Every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued, and not afterwards." We hold, therefore,.that the judgments of appellants against appellee became dormant in 1901, 10 years from the time the executions were issued, and that, under the statute, appellants had at that time the authority to institute suit to revive their judgments or to maintain an action of debt.

When the judgments became dormant, appellants then had a cause of action within the purview of article 3367, and, appellee being without the limits of the state at the time of the accruing of such action, the running of the statute of limitation of four years was suspended until his return, when an action to revive or for debt could be maintained.

Since arriving at the foregoing conclusions we have obtained a copy of a recent opinion of the Court of Civil Appeals of the Third Supreme Judicial District in the case of Gale Mfg. Co. v. 'Dupree, 146 S. W. 1048, not yet officially published, in which the subject in hand has been ably and forcibly presented by Chief Justice Key. In that opinion the case of Willis v. Stroud, 67 Tex. 516, 3 S. W. 732, in which dormancy is eliminated in so far as judgments are concerned from which executions have issued within 12 months, is thoroughly reviewed and overruled. We thoroughly concur with the reasoning of Judge Key. We conclude that the decision of the Supreme Court is shown to be erroneous by Judge Key, even in the light of the statutes and decisions of that time. It is well said by Judge Key: "To hold that limitation began to run from the date of the issuance of the execution upon the judgment would be to hold that the cause of action was barred before it came into existence, and this court is not willing to commit itself to such an absurd proposition."

[4-5] The judgments owned by D. Sullivan & Co., being dormant at the time of the issuance of the executions, could not, when attacked by the judgment debtor, support such executions, and the sheriff was properly enjoined from seizing and selling property by virtue of them, but the injunction should not have been perpetuated when it was ascertained that appellee's debts to appellants had not been paid. Seymour v. Hill, 67 Tex. 385, 3 S. W. 313; Warren v. Kohn, 26 Tex. Civ. App. 331, 64 S. W. 62. The executions were merely voidable, and, it appearing that appellee owes the money on the judgments, the injunction should be dissolved. The district court, having obtained jurisdiction of the cause by the application for the injunction, has the authority to determine all the issues between the parties. As said in the case of Seymour v. Hill: "The judgment by the justice of the peace, on which the execution in favor of Seymour issued, could not have been revived in the district court; but it would seem under former decisions of this court that, having jurisdiction of the matter through the application for an injunction, the court had jurisdiction to determine whether the sum for which the judgment was rendered in the justice's court was still due to Seymour, and, if so, to have rendered judgment in his favor." Authorities are cited, and to the same effect are Carter v. Hubbard, 79 Tex. 356, 15 S. W. 392; Railway v. Haynes, 82 Tex. 448, 18 S. W. 605; Ablowich v. Bank, 95 Tex. 429, 67 S. W. 79, 881; and Herring v. Mason, 17 Tex. Civ. App. 559, 43 S. W. 797.

[6] The judgment of the lower court is reversed, and the court having filed conclusions of fact showing that the amounts of the two judgments have never been paid and that the sum of the two judgments amounts to $240.44 with 12 per cent. interest per annum from July 13, 1891, it is the order of this court that appellants D. Sullivan & Co. do have and recover of E. B. Hollinger the sum of $240.44, with interest as stated, together with the sum of $10.20, costs in the justice's court, that the injunction be dissolved, and as the suit arose in the district court through the acts of appellants in issuing executions on voidable judgments appellants will be adjudged to pay the costs of the district court.

Reversed and rendered.

MOURSUND, J., entered his disqualification in this cause, and took no part in its decision.