**SCOTT v. McGLOTHLIN et ux.**

No. 12306.

Court of Civil Appeals of Texas. Fort Worth.
April 19, 1930.

Rehearing Denied May 24, 1930.

See, also (Tex. Civ. App.) 6 S.W.(2d) 129.

Mayer & Rowe and S. C. Rowe, all of Fort Worth, for appellant.

C. A. Wright, of Fort Worth, for appellees.

**CONNER, C. J.**

In its final analysis this suit is one by W. P. McGlothlin and wife, Nancy McGlothlin, against J. P. Scott, to set aside a sheriff's sale and deed to lot 10 and the east 30 feet off of lot 9, in block 27, in the Glenwood addition to the city of Fort Worth, and to reinvest in the plaintiffs the legal title to the same.

The plaintiffs alleged, in substance, that on May 7, 1924, defendant Scott had wrongfully procured a sheriff's deed purporting to convey said property which belonged to plaintiffs, thereby casting a cloud on plaintiffs' title. It was alleged that the sheriff's sale had been made at public outcry on May 6, 1924, acting by virtue of an order of sale issued April 13, 1924, by the clerk of the district court of Tarrant county, under a judgment rendered on July 3, 1922, in the cause of J. P. Scott v. W. P. McGlothlin and Nancy McGlothlin, No. 60229.

It was alleged that the petition in said cause declared upon two notes, one for $500, and one for $2,000, with interest and attorney's fees, but that the citation thereon nowhere declared the nature of plaintiff's demand to be the foreclosure of a mortgage lien, or a deed of trust lien, and nowhere made mention of any mortgage or deed of trust being sued on, so that plaintiffs had no notice of any intention on the part of Scott to seek to establish a foreclosure of the mortgage lien—the recitation of the citation in this respect being that the notes had been given to secure the purchase price of the lots mentioned; that as a matter of fact said notes had not been given to secure the purchase money for said property at all; hence that no proper citation had been served on plaintiffs showing the nature of Scott's demand to be the foreclosure of such a lien as was alleged in his petition. It was accordingly urged that there was no valid judgment upon which to issue an order of sale, by virtue of which the property was sold.

The plaintiffs further alleged that the use of the premises was reasonably worth $30 a month, and they sought to recover that sum for each month from May 15, 1924, together with 6 per cent. interest per annum, and prayed for judgment "cancelling said sale and deed, and so much of said judgment as forecloses on said property, and removing said cloud from said title," and for general relief.

In a second count the plaintiffs further alleged that the judgment was by default for the sum of $3,132.48, with foreclosure of a mortgage lien; that no execution or order of sale had been issued thereon for more than one year thereafter, and hence that the judgment was dormant; that the order of sale failed to credit the judgment with $790 that plaintiffs had paid thereon, and that should have been credited; that the order directed the sheriff to sell for the full amount of the judgment without allowing for such credit; that plaintiffs had not been advised of any sale until and except for a certain notice received by them May 1, 1924, to the effect that the said sheriff would on May 6, 1924, sell said property; that the notice of sale to the plaintiffs was not mailed to them until April 19, 1924, less than 20 days prior to the sale; that the sale had not been previously advertised in a newspaper of reputation and broad circulation, as required by law; that the property at the time of the sale was worth $5,000, but was sold, as recited in the sheriff's deed, for $1,500, which was a "grossly and shockingly inadequate price for said property, induced and contributed to, by the irregularities mentioned"; that plaintiffs did not know said judgment was dormant and did not know the price said property sold for until about one year after May 6, 1924; that, after the judgment became dormant, defendant sold and transferred it to W. Q. Seale without ever having allowed these plaintiffs any credit, which, together with at least $500

collected for rentals by defendant, would offset the credit on the judgment allowed upon the sale of the property.

Defendant Scott, in his fifth amended original answer, presented general and special exceptions to the plaintiffs' petition, a general denial, and specially pleaded to the effect that defendant McGlothlin and his attorney had many times discussed the suit in which the judgment was rendered, both before and after its rendition, and that the issuance of the order of sale had been delayed from the date of the judgment on July 3, 1922, to the date of the sale, on May 6, 1924, by reason of the fact that defendant was reluctant to sell said property on account of various promises and agreements of defendant McGlothlin to pay the same; that defendant after the rendition of the judgment made some payments thereon, the last of which was about September 15, 1923; that during the negotiations with defendant and his attorney the judgment of foreclosure under the deed of trust was frequently discussed, and that plaintiff McGlothlin, knowing the nature of the judgment and being fully informed thereof, induced the defendant through his attorney to delay the issuance of the order of sale and to defer the sale until he (McGlothlin) could arrange to pay and take up the judgment; that, at such request of the plaintiff, the defendant through his attorney agreed to defer the issuance of an order of sale so as to allow McGlothlin an opportunity to pay the judgment, and that, in pursuance of that "understanding and agreement so entered into by the plaintiff, the payments alleged by plaintiffs" were paid to the defendant; that no further payment on the judgment had been made by the plaintiff after September 15, 1923, whereupon, on or about April 4, 1924, the order of sale was issued and said property sold after due and legal advertisement and notice of said sale in accordance with the law; that, subsequently to the sale of the property under said judgment, the plaintiff McGlothlin was often in the office of Judge Booth, attorney, and many times discussed the sale with him and with the defendant, and was fully informed of the amount for which the property was sold. The defendant further alleged that the plaintiff, having full information and knowledge of the judgment and sale, as alleged, had negotiated with defendant and with his attorney, Judge Booth, with reference to his (the plaintiff's) repurchase of the premises, and endeavored to arrive at an agreement with the defendant as to an amount which would be accepted by defendant in settlement of the judgment, and defendant agreed with the plaintiff that he would accept $2,500 in addition to the payments theretofore made in full settlement of the judgment and accrued interest, and he would thereupon deed back to plaintiff the said property, the defendant, in the event of

the acceptance of such proposition, to receive all rents and revenues derived from said property. It was alleged that this offer by the defendant was not accepted by plaintiff.

The defendant further alleged that, notwithstanding the plaintiff's knowledge and information of the facts alleged, and notwithstanding the fact that plaintiff in no manner questioned the validity or legality of the judgment, but on the contrary had at all times treated the same as legal and binding upon him, on or about March 5, 1926, approached the defendant through Judge Booth with a proposition to buy said judgment, or the amount thereof remaining unpaid after credits through the sale of the property had been allowed, and, after considerable negotiations and discussions with the defendant and said attorney, it was agreed by this defendant to accept $500 in lieu of the balance remaining unpaid on said judgment; plaintiff at the time representing that he was buying said judgment for his brother-in-law, one W. Q. Seale, and that Seale would furnish the money with which the purchase was made, all of the negotiations, however, and all of the discussions with reference thereto having been initiated, conducted, and consummated by the plaintiff McGlothlin.

It was alleged that the defendant had reason to believe and did believe and charged it to be a fact, that said Seale was buying said judgment wholly and solely for the accommodation of McGlothlin, who arranged the purchase thereof, and with no intention of exacting the payment from McGlothlin; that plaintiff accepted said offer and that defendant received $500 for his said judgment, that is, the balance remaining unpaid on said March 5, 1926; that, prior to the closing of said transaction and as a part consideration therefor, the defendant agreed with McGlothlin to pay Judge Booth out of said $500 received the sum of $155.60, representing fees due to Judge Booth by McGlothlin for services rendered by Booth and unpaid by the former; that, in reliance upon the acts of McGlothlin, as well as in reliance upon the ratification of McGlothlin of the judgment and sale thereunder and the agreements and promises made by McGlothlin, as alleged, defendant was induced to accept the said $500 for the balance due on said judgment and to transfer and assign the same to defendant Seale, and was thereby placed in a worse position than he occupied theretofore; that said judgment had been duly abstracted and operated as a lien on other lands owned by McGlothlin; and that hence McGlothlin secured by said transfer of the remainder of the judgment an advantage, by reason of all which facts it was charged that McGlothlin had waived and was estopped from complaining of any irregularity in the rendition of the judgment or in the sale of the property, etc.

The defendant further sought by his pleadings to have the original judgment, with foreclosure of his mortgage lien upon the lots in question, reinstated in event the court should set aside the sheriff's sale in question.

Plaintiff in his third amended supplemental petition presented some forty special exceptions to the defendant's answer, and further pleaded a general denial to all of defendant's defensive allegations.

On a former appeal [6 S.W.(2d) 129], we ruled that the plaintiff's petition was not subject to a general demurrer as the court below had ruled, and the cause was remanded for a new trial.

On the trial from which this appeal has been taken the case was submitted to a jury on special issues, in answer to which the jury found that the reasonable market value of the property in question on May 6, 1924, was $3,500; that the notice of the sheriff's sale was mailed to the plaintiffs through the United States mail on April 19, 1924; that such notice was not "20 full days" before May 6, 1924; that $1,500 "was an inadequate price for the property in question" on May 6, 1924; that the reasonable rental value of the premises in question from June 1, 1924, to the date of the trial, to wit, March 13, 1929, was $25 per month; that the total amount due on the judgment sought to be set aside was $2,885.-60; that McGlothlin had made no request of defendant Scott to delay the sale of the property, nor had McGlothlin made any statement to Scott, or to his attorney, that the property was not worth the amount of the judgment, and that McGlothlin did not agree with Scott or with his attorney at the time of the transfer of the judgment to W. Q. Seale that the sale of the property should be settled on the basis of said Scott taking the property for $2,500, the balance remaining on the judgment to be transferred to said Seale for $500 and Scott to pay Booth attorney's fees and costs to the amount of $155.60.

The court upon the finding of the jury and other evidence contained in the record "was of the opinion," as recited in the judgment, that the plaintiffs should have and recover the property sued for and that the sheriff's deed of May 6, 1924, should be set aside and the legal title to the property be placed in W. P. McGlothlin and Nancy McGlothlin, as before the sheriff's sale of May 6, 1924, and for a money judgment against defendant to the extent of $790, paid by McGlothlin to Scott, plus the rental value of said property as found by the jury from June 1, 1924, said items of payment and monthly rentals to bear interest at the same rate as the judgment, to wit, 10 per cent. per annum, up to the point necessary to offset the $1,500 credit on the transfer of the judgment on February 13, 1926, by defendant to W. Q. Seale, and to bear 6 per cent. per annum on said payment and rentals thereafter, defendant being given credit for said $1,500 retained and acknowledged in said transfer, and for the taxes paid while in his hands and all costs, and the cloud upon the title of said property be removed.

It was accordingly adjudged that the plaintiffs, W. P. and Nancy McGlothlin, recover of defendant J. P. Scott "with legal title in the name of W. P. McGlothlin as prior to this controversy," said lot 10, and 30 feet off of the east side of lot 9, block 27, Glenwood addition to the city of Fort Worth, and that all cloud on account of said sheriff's deed to defendant be set aside, and that the plaintiffs, W. P. and Nancy McGlothlin, have and recover of said defendant J. P. Scott the further sum of $682.60, and all costs herein expended, for which process was ordered. It was further ordered that defendant Seale be dismissed at the cost of defendant Scott.

From the judgment so rendered, the defendant Scott has duly prosecuted this appeal.

Appellee presents some forty special exceptions to the assignments of error and propositions upon which appellant has based the appeal. It is evident that the objections cannot be severally discussed and determined within reasonable limits, and we think it sufficient to say that, while some of the objections may be well taken under the rules, yet, considered as a whole, and in view of article 1844, Rev. Civ. Statutes, which provides that "an assignment shall be sufficient which directs the attention of the court to the error complained of," the material questions are sufficiently presented to require disposition. Especially is this true, we think, in view of the fact that appellee by his counter propositions seems to treat the questions combated and which we shall treat, as presented by the assignments.

The original judgment was in favor of J. P. Scott against W. P. McGlothlin for $3,152.48, interest and attorney's fees, on two promissory notes, with a foreclosure of a "mortgage lien on lot 10 and the east 30 feet off of lot 9, block 27, in the Glenwood Addition to the City of Fort Worth." The judgment recites that both W. P. McGlothlin and Nancy McGlothlin "had been duly and personally served with citation and that they came not at all but wholly made default." It further recites that defendants "jointly and severally executed" the notes declared upon and had "jointly and severally executed their mortgage for the security of said notes." The judgment bears date July 13, 1922, and awards interest from its date at the rate of 10 per cent. per annum. It also directs the clerk "to execute an order of sale which constitutes an execution commanding the sheriff to sell said property as under execution and from the proceeds pay," etc. The judgment in all respects seems to be in due form.

The order of sale was issued on April 3, 1924, and is in due form. It directs the sale of the lots described in the judgment and the application of the proceeds with execution for any deficiency. The sheriff's return upon the order recites that it came to hand on April 3, 1924, and was executed on the same day by levying on the real estate described in the order and was "further executed by advertising the time and place of sale under said order of sale and that said land would be sold before the courthouse door in Tarrant County, Texas, in the City of Fort Worth on the first Tuesday in May, A. D. 1924, the same being the 6th day of May, A. D. 1924, by causing notice thereof to be published in the English language once a week for three consecutive weeks immediately preceding said sale in the Protestant Herald, a newspaper published in said Tarrant County, Texas, the first of said publications having appeared not less than twenty days immediately preceding the 6th day of May, A. D. 1924, and the 5th day of April, A. D. 1924, and the second on the 12th day of April, A. D. 1924, and the third on the 19th day of April, A. D. 1924, and by mailing to each of the within named defendants a copy of said notice of sale," and by selling the property to J. P. Scott, he being the highest bidder, for $1,500, and paying $53.10 costs, crediting the balance of $1,446.90 on the judgment.

It was admitted that no order of sale had issued until April 3, 1924, and that no motion for a new trial was filed in the case, and no appeal from the judgment or writ of error or supersedeas was filed.

█ While in appellees'.brief it is asserted that they do not question or seek to set aside the personal judgment against them, yet it is evident that the finding and judgment of the court, as recited in the judgment, that appellees had executed a mortgage to secure the payment of the notes declared upon and the decree foreclosing such mortgage is a very material and essential part of the decree, and we know of no rule by which we can set aside the mortgage and decree for its enforcement without setting aside the entire judgment, and we think it clear that the judgment as a whole cannot be set aside in any material respect, under the state of the record before us. As before stated, the judgment recites due and personal service upon both appellees, and they failed to appear and answer, and now fail to present any defense to the original action of Scott against them, except that it is urged that the notes declared upon had not been given to secure the purchase money of the property in question, as recited in the citation. It is also denied, apparently, that a mortgage was given, but we have failed to find any denial of the fact that a trust deed conveying the lots in question had been given to secure the payment of the notes as appears in some of the recitations. We find no merit in these contentions. We must assume from the recitations in the judgment that a lien, by mortgage or trust deed, or in some form, had been executed by appellees, and the misrecitals in the citation or judgment, if any, were evidently not regarded at the time as of serious consequence; otherwise appellees, upon appearance, as they were commanded to do by the citation served on them, would have had the proper correction made; or, if necessary, secured correction upon a motion for new trial, or upon appeal, or writ of error.

█ It is undoubtedly the settled rule of this state that a judgment cannot be set aside, even upon a direct attack, and even though the party questioning the same may not have been served with citation, unless a meritorious defense to the action is alleged. See Brown v. Clippinger, 113 Tex. 364, 256 S. W. 254, 255, in which case the Supreme Court granted a writ of error to decide the question whether a party seeking equitable relief to set aside a judgment not void on its face must show a meritorious defense to the action on which judgment was based, even though the ground claimed was lack of jurisdiction of the person. The court, after mentioning the fact that the judgment recited the facts, as did the judgment before us, which sustains the court's jurisdiction, says:

"If it was the correct judgment on the merits, a direct proceeding to vacate it would not have had a different result. For the party recovering a judgment must be made a party to a proceeding for its vacation, with the right to enforce any subsisting obligation of the complainant on which the judgment was predicated. If the complainant was truly bound to render to the plaintiff in the judgment all that the judgment required, his direct action must end with another adjudication against him, having precisely the effect of that sought to be annulled. Courts of equity do not sit to remedy injuries wholly technical and insubstantial."

In House v. Collins, 42 Tex. 493, it is said that it would be useless for a court of equity to set aside one judgment when the principles of equity would require another adjudication of like import.

In Hamblin v. Knight, 81 Tex. 355, 16 S. W. 1082, 26 Am. St. Rep. 818, our Supreme Court, where relief from a judgment rendered without notice was sought by injunction, held that the complainant must show that he has a meritorious defense to the action.

In Johnson v. Templeton, 60 Tex. 238, the court said:

"Such bills seeking relief from final judgments, solemnly rendered in the due and ordinary course of the administration of justice by courts of competent jurisdiction, are always watched by courts of equity with ex-

treme jealousy, and the grounds upon which interference will be allowed are, confessedly, narrow and restricted.

"It will not be sufficient to show that injustice has been done * * * it must further distinctly and clearly appear that this result was not caused by any inattention or negligence on the part of the person aggrieved, and he must, among other matters, show a clear case of diligence and of merit to obtain the interference of a court of equity in his behalf at such a state of the case. * * *

"Relief will not be granted unless the party seeking it can show clearly to the satisfaction of the chancellor that he has a good defense to the action, which he was prevented from making by fraud, accident or the acts of the opposite party, wholly unmixed with any fault or negligence on his part."

A similar holding was made in the case of Brackenridge v. Cobb, 85 Tex. 448, 21 S. W. 1034. See, also, the following cases: Cooper v. Cooper (Tex. Civ. App.) 260 S. W. 679; Duncan v. Smith Bros., 113 Tex. 555, 260 S. W. 1027; Lamb-McAshan Co. v. Ellis (Tex. Com. App.) 270 S. W. 547; Lawther Grain Co. v. Winniford (Tex. Com. App.) 249 S. W. 195, 198; Cragin v. Henderson County Oil Development Co. (Tex. Com. App.) 280 S. W. 554; Tanton v. State Nat. Bank (Tex. Civ. App.) 277 S. W. 449; Jones v. Wootton (Tex. Com. App.) 228 S. W. 142; Hadad v. Ellison (Tex. Civ. App.) 283 S. W. 197; Thomas v. Goldberg (Tex. Civ. App.) 284 S. W. 231; First Nat. Bank v. Hartzog (Tex. Civ. App.) 192 S. W. 363; Texas & P. Ry. Co. v. Duff (Tex. Civ. App.) 207 S. W. 580; Eldridge v. Eldridge (Tex. Civ. App.) 259 S. W. 209.

It is the rule also that, in a suit to set aside a default judgment rendered at a prior term, the complaining party must excuse his failure to file a motion to set aside the judgment and must excuse the failure to avail himself of legal remedy by appeal or writ of error. See Home Ass'n v. Boswell (Tex. Civ. App.) 268 S. W. 979, and cases cited therein. See, also, Moore v. Moore (Tex. Civ. App.) 259 S. W. 322.

In the case before us, there is no excuse whatever for appellees' failure to appear in the first instance as commanded by the citation served upon them, or for their failure to move for a new trial or to appeal. We accordingly conclude that the judgment assailed imports verity and cannot in this proceeding be impaired in any material respect.

We are thus brought to the question of whether the court erred in his judgment in setting aside the sheriff's sale and deed in question, reinvesting the title to said lots free of all incumbrance, and in addition thereto rendering the money judgment stated in favor of appellees. As will be seen by reference to statements hereinbefore made, appellees were served with the written notice of the sale only 17 days prior to the sale, and appellees insist that such failure of the full 20 days notice is fatal to the sale, citing article 3808, Rev. Statutes, our opinion on a former appeal in this case, 6 S.W.(2d) 129, Leeper v. O'Donohue, 18 Tex. Civ. App. 531, 45 S. W. 327, writ refused, and Moore v. Miller (Tex. Civ. App.) 155 S. W. 573. Our former ruling on this point was upon an assignment of error to the action of the court in sustaining a general demurrer to appellees' petition, which is not included in the transcript on this appeal. Assuming, however, that the present petition and the former are substantially the same, our ruling was merely to the effect that a failure to give the full 20 days' notice, coupled with the other irregularities and proof that such irregularities contributed to the alleged gross inadequacy in price, would justify a setting aside of the sale.

Article 3808, so far as pertinent, reads: "The time and place of sale of real estate under execution, order of sale, or venditoni exponas, shall be advertised by the officer by having the notice thereof published in the English language once a week for three consecutive weeks preceding such sale, in some newspaper published in said county. The first of said publications shall appear not less than twenty days immediately preceding the day of sale. * * * The officer making the levy shall give the defendant or his attorney written notice of such sale, either in person or by mail, which notice shall substantially conform to the foregoing requirements."

Appellees make no complaint of the written notice of sale received by them other than that such service was not for the full 20 days' period specified in the statutes. We did not undertake to hold that such failure as a matter of law required the setting aside of the sale, and the case of Leeper v. O'Donohue, 18 Tex. Civ. App. 531, 45 S. W. 327, upon which our former pronouncement was made, is clearly distinguishable, in that there the 18 days' notice given was promptly protested before and at the time of the sale, and the court held that the fact of failure to give full notice, coupled with the fact that the sale was for two-fifths only of the value of the property, required the sale to be set aside. In that case defendants were prompt at every stage of the proceeding to assert their right, and the opinion nowhere intimates that the objection could not be waived. So, in the case of Moore v. Miller (Tex. Civ. App.) 155 S. W. 573, relied upon by appellees, the court, after stating that mere inadequacy of price does not require a setting aside of a sale (citing numerous cases), shows that a large number of city lots in

San Antonio, of the value, as found by the jury, of $21,500, were sold in bulk, contrary to the statute, for $138, without any previous notice of the sale whatever, there also being circumstances of fraud, and money sufficient to satisfy the debt for which the land sold was tendered into court. Neither in this case was it held that the irregularities were, as a matter of law, fatal and could not be waived.

In Morris v. Hastings, 70 Tex. 26, 7 S. W. 649, 8 Am. St. Rep. 570, it is said, quoting from the headnotes, that: "When notice of a judicial sale has not been properly given, if objection be made by defendant in execution without unnecessary delay, the sale may be set aside; if objection be not made in reasonable time, it will be considered as waived."

In Houston v. Shear (Tex. Civ. App.) 210 S. W. 976, it was said, quoting from the headnotes, that: "Statutes governing executions are for the most part directory in their nature, and mere irregularity in connection with gross inadequacy of consideration is insufficient to vacate a judicial sale, unless the irregularity in some way conduced to that inadequacy; although, when the price is enormously inadequate, slight irregularities will be sufficient to justify setting aside the sale by a direct proceeding therefor."

In Allen v. Pierson, 60 Tex. 607, it was held that mere irregularity in making a judicial sale, even when taken in connection with gross inadequacy of consideration, will not alone, as a matter of law, be held sufficient ground for vacating a judicial sale, unless the irregularity in some way conduced to that inadequacy.

The statute (article 3808) from which we have quoted only requires that the written notice to be served upon the defendant "shall substantially conform" to the preceding requirements of the article, and no other failure in observing the requirements of the article, save the requirement of full 20 days' notice, is complained of. There is also a contention that the newspaper in which the published notice of sale was made was not one of general circulation, and there was evidence of such fact. But the requirement of the article seems to be that it is to be published "for three consecutive weeks preceding such sale, in some newspaper published in said county." It is not contended that the sale was not published for the required length of time in a newspaper, and there is absolutely no evidence that appellees made any effort to attend the sale and make protest of any kind, or to induce others to do so, or to induce others to bid upon the property, or that there was but one bidder, or a small crowd, or that the irregularities complained of caused the bid for which the sheriff sold to be less than it would otherwise have been. It is to be noted also that the jury's finding does not disclose that the inadequate price for which the land sold was "gross," nor can it hardly be so said from the evidence. For instance, but five witnesses testified. W. H. Greenwood testified the value of the property to have been from $2,250 to $2,500; C. H. McBrayer, depending on use, $2,000 to $2,500; Mrs. D. Rogers, "$2,500 would be a good price." Appellees' witnesses testified as follows: J. F. McEntire, $3,000 to $3,500; J. L. Clingman, $2,500 to $4,000. The jury's finding was $3,500. It can hardly be said that the inadequacy for which the property sold was so great as to shock the conscience and require a court of equity to set aside the sale for that irregularity.

Appellees also complain of several other irregularities, for instance, that the judgment was dormant at the time of the issuance of sale, but this fact does not render the sale void but merely voidable. See Maverick v. Flores, 71 Tex. 110, 8 S. W. 636; Odum v. Menafee, 11 Tex. Civ. App. 119, 33 S. W. 129; Taylor v. Doom, 43 Tex. Civ. App. 59, 95 S. W. 4; Parker v. Moody, 43 Tex. Civ. App. 492, 96 S. W. 650; Burlington State Bank v. Marlin (Tex. Civ. App.) 207 S. W. 954; Spiller v. Hollinger (Tex. Civ. App.) 148 S. W. 338, 341; Darlington v. Allison (Tex. Civ. App.) 12 S.W.(2d) 839; Meader Co. v. Aringdale, 58 Tex. 450.

So too do we think the fact that the $790 paid on the judgment by the appellees after the rendition of the judgment was not credited upon it at the time of the sale is but an irregularity not shown to have influenced in any degree the price for which the sale was made.

Nothing further now occurs to us relating to the irregularities complained of that require discussion, and we have concluded that, upon the record as a whole and the undisputed evidence, the facts show that appellees waived, or are estopped from setting aside, the sale in question.

The evidence of appellee W. P. McGlothlin himself is undisputed to the effect that on or about February 13, 1926, he owned other lands situated in Tarrant and Dallas counties which were incumbered to secure a lien thereon; that McGlothlin was without the money to pay the loan or the interest thereon, and desired to renew it; that the judgment in favor of Scott had been duly abstracted and operated as a lien upon the McGlothlin lands just referred to; that his application to renew his loan and get enough additional to pay the interest due thereon would not be granted without a guaranty of the title, which guaranty was refused because of the pendency of the abstracted Scott judgment. In this condition of affairs, McGlothlin sought to have the judgment lien of Scott released, which was refused. He then negotiated for a sale of the judgment, and Scott proposed to sell the unpaid part of the judgment to

McGlothlin for $500. McGlothlin then applied to his brother-in-law, W. Q. Seale of Dallas, who furnished McGlothlin with the money, and therewith McGlothlin secured from Scott, on the 13th day of February, 1926, an assignment of the judgment, the assignment, however, contained the special provision that the "judgment bears credit of $1,-500 by sale of the house and lot which is not hereby transferred." By this transaction Scott was placed at a disadvantage, and McGlothlin obtained one. Scott thereby lost what ever right he had to enforce his judgment lien for the unpaid part of his judgment; McGlothlin thereby acquired the benefit of having the Scott lien removed from his lands, and thus was enabled to renew the loan due another that was already existing.

The evidence suggests that the transfer of the judgment, while in form to Seale, was in fact solely for the benefit of McGlothlin. The pleadings which brought Seale into the case are not before us, but the present record indicates no claim or contest on his part and there is no evidence that we find of any promise on McGlothlin's part to repay Seale the $500 advanced by him. At all events, the status quo cannot be restored, and it seems to us that every essential element of waiver and of estoppel appears in the case. Scott, bad faith on his part not being alleged or shown, was not chargeable with the rents of the property legally vested in him by the sheriff's sale, and we are unable to adopt the theory of the facts as contended for in behalf of appellees and apparently adopted by the court.

After appellant's transfer of sale, appellee's brother-in-law, Seale, released the lien of the abstracted judgment on the other lands owned by McGlothlin for a nominal consideration, and appellees, as already noted, thereby procured a very distinct advantage and benefit besides having placed an unpaid part of the judgment in friendly hands. In addition to this, he claimed and was awarded a money judgment against appellant for an amount almost equal to all he had ever paid on the judgment against him, besides recovering full free title and possession to the lots in question. This being an equitable action, we have been unable to follow and approve the theory and mathematical calculations upon which the judgment rests.

Should we set aside the sale, it would follow that the credit of $1,500 entered upon the Scott judgment should also be set aside, and equity would require of us, in obedience to appellees' pleadings, to revive the Scott judgment with the foreclosure of his mortgage lien and order an alias execution for the sale of the property to satisfy the $1,500 yet due Scott, together with interest thereon at the rate of 10 per cent. per annum, amounting in all to approximately $2,400. See Roller v. Wooldridge, 46 Tex. 485; Overton v. Blum, 50 Tex. 417; Exchange State Bank of Fort Worth v. Hensley & Roland (Tex. Civ. App.) 240 S. W. 679.

We cannot approve the result of the trial court below, and, inasmuch as the evidence upon which we have based our conclusions is undisputed, we think the judgment below should be reversed and here rendered for appellant, and it is so ordered.

BUCK, J.

The writer is not satisfied that the opinion of Chief Justice CONNER is correct, or is he sure that it is not correct. He has not had time to go over it carefully. Therefore the writer does not feel justified in agreeing with said opinion, or in dissenting therefrom. Owing to other pressing duties, he will not have an opportunity within the next few weeks to carefully consider this case. He therefore recuses himself from sitting in this case. If later, upon further investigation, he concludes he cannot agree with this opinion, he will briefly note the grounds of dissent.